**COMMONWEALTH OF MASSACHU-
SETTS, Respondent, Appellant,**

v.

**Donald M. PAINTEN, Petitioner,
Appellee.**

**No. 6720.**

United States Court of Appeals
First Circuit.

Heard Sept. 13, 1966.

Decided Nov. 10, 1966.

See also D.C., 254 F.Supp. 246.

Willie J. Davis, Asst. Atty. Gen., with whom Edward W. Brooke, Atty. Gen., was on brief, for appellant.

Louis M. Nordlinger, Boston, Mass., for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

Petitioner was convicted in the state court of armed robbery and various connected offenses, and was given extensive sentences. His conviction was affirmed *sub nom.* Commonwealth v. Binkiewicz, 1961, 342 Mass. 740, 175 N.E.2d 473. Thereafter he sought a writ of error in the state court, raising, for the first time, the matters now before us. The writ was dismissed. Having thus exhausted his state remedies, he filed a petition for habeas corpus in the district court. The writ was granted, Painten v. Commonwealth, D. Mass., 1966, 252 F.Supp. 851, and the Commonwealth appeals.

It is necessary for us to consider only one of petitioner's contentions. In upholding the writ on this ground we rely upon the findings of the district court, which appear at 252 F.Supp. 855–856, except for the recitation of a conversation, more precisely set out hereafter, that took place when the police knocked at the

petitioner's door. Very briefly, two policemen, knowing of a holdup but having no substantial clues, came across petitioner and one Ash, and followed them to petitioner's apartment. Their grounds for suspicion did not, even remotely, amount to probable cause for arresting either Ash or petitioner, either for the holdup or for any other crime. After arranging for plainclothesmen to station themselves at the back of the building one of the uniformed officers then knocked on the door. He testified as follows:

"I rapped on the door, and a voice said, 'Who is it?' I said, 'Police officers.' The door opened about three inches, and Mr. Painten looked out at me. He saw us. I had my badge in my hand. He said, 'Will you wait a minute?' I said, 'Sure.' He closed the door. As he closed the door, maybe ten seconds later I heard what to me sounded like a window opening and closing. He then, a few seconds after the door was opened, we were allowed to enter. * * * I asked who lived there. Painten volunteered it was his apartment."

After entering the apartment, the police noticed a bulge in Ash's pocket, and removed some $200 in crumpled bills. They then called to the plainclothesmen to come up, and received the response that "someone" had thrown "something" out the window. This information led to the discovery on the fire escape on a floor below of a paper bag containing two pistols and some cartridges. Petitioner was thereupon arrested; the apartment was searched, and a large amount of currency was found under a mattress. At petitioner's trial the guns and bills were introduced in evidence.

Although these events took place in 1958 it is conceded that petitioner is in a position to obtain the benefits of the doctrine of Mapp v. Ohio, 1961, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081.

This case falls over the permissible line that we recently sought to delineate in Robbins v. MacKenzie, 1966, 1 Cir., 364 F.2d 45, cert. den. 10/17/66, 87 S.Ct. 215. In that case the district court found, on adequate evidence, that no search was intended. We held that where the police, having reasonable suspicion but not probable cause, knocked on a door and asked to talk, and had no other purpose, they were entitled to treat an invitation to enter as voluntary consent. Our discussion need not be repeated, but we distinguished cases where the purpose of the police was not merely to talk, but to make a search.

In the case at bar the police sought entry without stating their purpose. If this was a request to make a search, acquiescence when police knock and exhibit a badge is not true consent to a search, as the cases cited in Judge Coffin's dissenting opinion in *MacKenzie* make clear. The Commonwealth's own evidence indicates that a search was in fact intended. In addition, the district court found that the police purpose was to arrest petitioner, although they had no warrant or ground for obtaining one. The Commonwealth disputes this appraisal of the testimony, and the correctness of the court's finding as to purpose, but its own police officer, with commendable candor, testified as follows:

"Q. Was it your opinion * * * something was going on in that household to give you reason to enter the household without a warrant?" A. "Yes, sir * * * in that household, it has people with a background, people that I knew were in there, I might be able to solve a string of serious crimes."

This suggests to us a proposed investigation surpassing mere dialogue. When asked a second time his reason for seeking to enter, the officer testified,

" * * * now we have them [Ash and petitioner] together in the apartment and the holdup of the loan company is in my mind now * * * and I find out he is living there, these things in my mind lead me to arrest him for that holdup."

It is apparent that the police, knowing of a crime and knowing that Ash and petitioner were suspicious characters, but

having no reason to connect them with the crime they were investigating, set out to arrest and search the men in the hope that evidence would develop. It is precisely such tactics that the Fourth Amendment makes unlawful.

It follows that, as the court said in Hobson v. United States, 8 Cir., 1955, 226 F.2d 890, at 894, "The defendant's action in throwing the package was not voluntary but was forced by the actions of the police," and since their actions were improper, the police were not entitled to the fruits. The state could not use the guns, even as probable cause, if they were such, to justify their subsequent conduct in making an arrest, or the search in which they discovered the money. Wong Sun v. United States, 1963, 371 U.S. 471, 482–484, 83 S.Ct. 407, 9 L.Ed.2d 441.

Affirmed.

COFFIN, Circuit Judge (concurring).

While I concur with my brothers in the result reached by them, I differ as to the path taken to reach it. I would link the inadmissibility of the guns and bullets not to the officers' request for entry, whether lawful or not, but rather to the later, unauthorized exercise of dominion over petitioner's apartment when an officer used it as a conduit of convenience for seizing the bag on the fire escape. That the officers could have obtained the bag without invading petitioner's premises does not cure the defect. The mere fact that officers had previously gained access to the apartment, even if lawfully, and were conversing in it with petitioner did not, in my view, provide another officer with license to use it as a thoroughfare.

Without the guns and bullets contained in the bag, there was no probable cause for any arrest or subsequent search.

What troubles me about the opinion of my brothers is their reasoning that, since the officers harbored an improper purpose, their knocking on the door and identifying themselves was also "improper" and immunized from use any objects jettisoned into public view and beyond petitioner's premises. I would not go so far as to say that such preliminaries could shield evidence later discovered if it were obtained without going on the premises of a suspect. Such a holding, it seems to me, would open the door unnecessarily to claims of immunity buttressed on routine and proper investigatory actions of police. Even if the request to enter in this case was improper, it by no means follows that that conduct alone was so shocking as to taint evidence virtually handed to the officers on a silver platter or, in this case, on an iron grating.