**UNITED STATES of America**
**v.**
**Anthony L. MANNI.**
**Cr. A. No. 66–263.**

United States District Court
D. Massachusetts.
June 16, 1967.

---

John M. Callahan, Asst. U. S. Atty., Department of Justice, Boston, Mass., for the U. S. Government.

Leo Leavitt, Boston, Mass., for defendant.

## MEMORANDUM

MURRAY, District Judge.

The defendant is charged in four counts of this indictment as a convict who did "knowingly transport and cause to be transported in interstate commerce" certain described firearms in violation of Title 15, U.S.C., Section 902(e). He moved to suppress (1) admissions made to Treasury Agents in his home, and (2) firearms seized therein by the agents on March 31, 1966. Evidence was offered by both parties at a hearing on the motion. There is a conflict in the testimony on certain important matters, and my findings reflect the view of the evidence that I find reliable.

On March 29, 1966 one Hoban, an agent of the Alcohol and Tobacco Tax Division, Treasury Department (called Hoban hereafter), received a report from a brother agent in New Hampshire that one Anthony Manni, 10 Common Street, Charlestown, Massachusetts, had purchased eleven handguns during the preceding six months at the Derry Trading Post, Derry, New Hampshire. Thereupon, Hoban went to the custodian of criminal records maintained by the Commonwealth of Massachusetts and discovered that one Anthony Manni, 10 Common Street, Charlestown, had been previously convicted of a felony. Hoban obtained a photograph of the felon, and, with another agent, went to 10 Common Street and talked with defendant's wife. Hoban told her that he and his companion were government agents who wished to talk with her husband. He was not at home.

During the next two days, Hoban returned to the Manni home four times, at the time of day when Mrs. Manni had told him her husband was most likely to be home, but on each occasion Mrs. Manni told him her husband was not there. After the fourth visit, about 4 p. m. on March 31, Hoban drove around the block and parked up the street. About ten minutes later, he saw Manni enter his home. Hoban recognized the defendant as the convict in the photo-graph. Hoban left the car accompanied by Special Investigator Peter Carr and walked down the street to the apartment house in which the defendant had a first-floor apartment. Hoban and Carr entered the building and walked down the common hallway to the door of the Manni apartment. Since the door was almost wide open, they could see Manni standing in the first room as you enter. Hoban knocked and the defendant turned toward him. Hoban held up his pocket commission and told the defendant he was from the Treasury Department and had been trying to get hold of him. Manni said: "Come in." Manni had known for two days that federal agents wanted to talk with him and had been told by his wife when he arrived that they were on the street outside.

As Hoban and Carr entered the room, Manni went and sat behind a desk facing the door. In open view to the left of Manni as he sat at the desk was a wooden cabinet with glass doors which contained a number of handguns and rifles. Hoban told Manni they were investigating possible violations of the "Federal Firearms Act," that Manni did not have to answer any questions put by them and could consult his lawyer before talking with him (Hoban).

In response to Hoban's questions, Manni identified himself, admitted purchasing revolvers in Derry, New Hampshire, and stated that he disassembled them in New Hampshire and from time to time transported different parts from different guns to his home in Charlestown and there reassembled them. Hoban asked if the firearms in the cabinet were the firearms the defendant had purchased in New Hampshire. He said they were. When Hoban asked if he could look at them, the defendant said: "Go ahead." Hoban had with him a list of serial numbers of the handguns purchased in New Hampshire, which he checked against the handguns he took from the cabinet, discovering that two of the handguns were on the list. Defendant admitted buying the other firearms in New Hampshire as well. When

Manni admitted he had done time in State Prison in 1955, Hoban told him he was under arrest for violation of the Federal Firearms Act. Manni protested: "You can't do this to me. I didn't break any law. I brought these firearms down here in pieces." After Manni tried unsuccessfully to reach his attorney by telephone, he was taken in custody to the office of the Treasury Department. All the firearms in the cabinet were seized, but no search of any other area of the house took place.

It is undisputed in this case that the agents did not have a search warrant or a warrant for Manni's arrest when they entered his home. Although the similarity of the defendant's name and that given by the purchaser of the firearms in New Hampshire and the identity of the 10 Common Street address gave Hoban sufficient grounds to believe they were one and the same person, Hoban was not in possession of reasonable grounds to believe that the crime of interstate transportation of firearms had been committed or that Manni, a former convict, had committed it. But he did have information that warranted his suspicion that a crime may have been committed.

■ I find that in pursuing his investigation Hoban went to Manni's home for the purpose of talking with him to confirm the information Hoban already had and to obtain additional information if possible; and that, although he doubtless also wanted to ascertain the whereabouts of the firearms and intended to seize them if found, Hoban did not intend to conduct a search in the Manni home. Accordingly, I rule that Hoban's entry into Manni's home and his presence in the front room were lawful. Robbins v. MacKenzie, 364 F.2d 45 (1st Cir. 1966); Davis v. United States, 327 F.2d 301 (9th Cir. 1964); Reed v. Rhay, 323 F.2d 498 (9th Cir. 1963). Compare, Johnson v. United States, 333 U.S. 10, 68 S.Ct. 367, 92 L.Ed. 436 (1948); Commonwealth v. Painten, 368 F.2d 142 (1st Cir. 1966).

■ Manni was not in custody during the interview and, therefore, Hoban's failure to give the full *Miranda* warning, if the rule of that case should be applied to an interview on that date, does not require suppression of Manni's statements. Manni's statements, given after he had been told of his right to remain silent, were voluntary and, accordingly, are admissible at his trial.

■ Manni freely and voluntarily gave his consent to Hoban's request to be allowed to look more closely at the guns in the cabinet. Whatever his motive—whether he actually thought he had not violated the law by transporting the guns in parts, or whether, as I believe, he disassembled the guns for easier concealment while he transported them—I find that without any coercion or compulsion, express or implied, having been used by Hoban and Carr, Manni consented to Hoban's taking a closer look at the guns which were displayed in open view in the cabinet and which he had admitted purchasing in New Hampshire and transporting in parts to Massachusetts. Since Manni gave his consent, the search was lawful.

■ Furthermore, no search took place until Hoban removed the guns from the cabinet because until then he had merely seen what was placed before him in full view. Ker v. State of California, 374 U.S. 23, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963). By the time Hoban went to the cabinet and took out the guns Manni's statements together with what he already knew had given him probable cause to arrest Manni. The arrest, in fact, took place only minutes later. "When probable cause for an arrest exists independently of what the search produces, the fact that the search precedes the formal arrest is immaterial when the search and arrest are nearly simultaneous and constitute for all practical purposes but one transaction. To hold differently would be to allow a technical formality of time to control when there has been no real interference with the substantive rights of a defendant." Holt v. Simpson, 340 F.2d 853, 856 (7th Cir. 1965). Accord, United States v. Lucas, 360 F.2d 937 (6th Cir.

1966), cert. den. 385 U.S. 875; Lovelace v. United States, 357 F.2d 306 (5th Cir. 1966). I rule that this was a search incident to a lawful arrest and, accordingly, that the firearms are admissible at Manni's trial.

Motion denied.