## MASSACHUSETTS v. PAINTEN.

No. 37. Argued October 18, 1967.—Decided January 15, 1968.

*Elliot L. Richardson,* Attorney General of Massachusetts, argued the cause for petitioner. With him on the briefs were *Willie J. Davis* and *James B. Krasnoo,* Assistant Attorneys General.

*Louis M. Nordlinger* argued the cause and filed a brief for respondent.

*Anthony G. Amsterdam* and *Melvin L. Wulf* filed a brief for the American Civil Liberties Union et al., as *amici curiae,* urging affirmance.

PER CURIAM.

In 1958 respondent was tried and convicted in Middlesex Superior Court, Massachusetts, for armed robbery of a bank and related offenses. He appealed, and in 1961 his conviction was affirmed by the Supreme Judicial Court of Massachusetts, *sub nom. Commonwealth* v. *Binkiewicz,* 342 Mass. 740, 175 N. E. 2d 473.

Respondent eventually filed a petition for a writ of habeas corpus in the Federal District Court. Testimony was taken by the District Court on December 30, 1965. It ruled that respondent's Fourth Amendment rights had been violated by the entry into his apartment, by his arrest, and by the search and seizure of certain articles in his apartment which were introduced in evidence

against him. Accordingly, it set aside his conviction and ordered his release.[1] *Mapp* v. *Ohio,* 367 U. S. 643 (1961). The Court of Appeals affirmed.[2] We granted certiorari because of the importance of the constitutional issues presented.[3]

At the time of respondent's trial in 1958, Massachusetts did not have an exclusionary rule for evidence obtained by an illegal search or seizure, *Commonwealth* v. *Wilkins,* 243 Mass. 356, 138 N. E. 11 (1923); *Commonwealth* v. *Spofford,* 343 Mass. 703, 706, 180 N. E. 2d 673, 675 (1962), and the parties did not focus upon the issues now before us. The evidentiary hearing in 1965 took place almost eight years after the events.

After oral argument and study of the record, we have reached the conclusion that the record is not sufficiently clear and specific to permit decision of the important constitutional questions involved in this case. The writ is therefore dismissed as improvidently granted. Cf. *Smith* v. *Mississippi,* 373 U. S. 238 (1963).

*Dismissed.*

MR. JUSTICE FORTAS, concurring.

The dissent written by my Brother WHITE, with whom my Brothers HARLAN and STEWART join, impels me to add this note. I agree with the Court's action in dismissing the writ of certiorari for having been improvidently granted because the record is not adequate for disposition of the case in terms of its constitutional problems. MR. JUSTICE WHITE's opinion is not in disagreement on this point. He would remand the case for a purpose which seems to me to be unreal: that is, to hold an inquiry, almost 10 years after the event, as to "whether Officer Rufo could have believed that the

---

[1] 252 F. Supp. 851 (D. C. Mass. 1966).

[2] 368 F. 2d 142 (C. A. 1st Cir. 1966).

[3] 386 U. S. 931 (1967).

bag had been abandoned and whether the bag was searched before or after guns were observed." This inquiry—at this late date—is as elusive as an attempt to capture last night's moonbeam.

As some of my colleagues have often said, we do not sit as a court of criminal appeals to review judgments of state courts. The question in the instant case comes here as a result of federal habeas corpus proceedings. We should consider it if, and only if, we should and can dispose of it on its record in terms of constitutional principle. The Court's disposition of this case is based upon the sound premise that we should not use our certiorari jurisdiction to express our views on a point in a case which we cannot dispose of because of inadequacies of the record which cannot realistically be remedied.

I should not ordinarily feel it necessary to file a comment in this vein. In the present situation, I am troubled lest my Brother WHITE's dissent should give the impression that only he and my Brothers HARLAN and STEWART believe that the court below erred in relying on its inferences as to the undisclosed intent of the officers. I agree with the Court's disposition of this case, not because I disagree with the position stated in the dissent on this issue, but because oral argument and detailed consideration of the case after certiorari was granted disclosed the infirmity of the record which precludes the orderly disposition of the case by this Court.

MR. JUSTICE WHITE, with whom MR. JUSTICE HARLAN and MR. JUSTICE STEWART join, dissenting.

The Court granted certiorari [1] because the rule of law applied by the Court of Appeals to the facts found by both it [2] and the District Court [3] raised troubling and difficult

[1] 386 U. S. 931 (1967).

[2] 368 F. 2d 142 (C. A. 1st Cir. 1966).

[3] 252 F. Supp. 851 (D. C. Mass. 1966).

questions about the restrictions imposed by the Fourth Amendment on evidence that may be admitted at a criminal trial. The Court now says, quite rightly, that the record in this case is stale and the facts unclear. We have, however, a set of facts found by a United States District Court and approved by a Court of Appeals. Determining what legal consequences should follow from those facts is difficult, but is the task normally entrusted to this Court. I would accept the facts found by two federal courts and decide the questions of law presented to us.

The relevant facts found below are as follows. Two police officers, having a suspicion that respondent had committed felonies but not having probable cause to believe that he had committed them, went to the door of respondent's apartment. Their motive, the courts below found, was to arrest and search, whether or not their investigation provided the probable cause that would make an arrest and search constitutional. This plan was not communicated to respondent, who when he came to the door was led to believe the officers wished only to speak to him. Told no more than that the officers wished to ask questions, respondent asked them to wait a minute, closed the door, tossed a paper bag onto a fire escape, returned, and let the officers enter. The officers did nothing to respondent but ask questions;[4] while doing that another officer, posted below, who had seen the bag drop, walked through the apartment and out onto the fire escape, where he found guns and bullets in the bag.

---

[4] One officer "stuck his hand into" the pocket of respondent's companion, one Ash, and "found about $200.00 in ten and twenty dollar bills stuffed in the pocket." 252 F. Supp., at 856. The bills were apparently not introduced at respondent's trial, but the officers' conduct in searching Ash without justification may well have influenced the courts below on the question of the officers' intentions.

The officers arrested respondent, and undertook a complete search of the apartment incident to the arrest.

On these facts the District Court concluded that "[s]ince the officers had no probable cause to arrest when they entered the apartment they cannot retroactively validate the entry or arrest by reliance on what they discovered as a result of the illegal entry." 252 F. Supp., at 857. The Court of Appeals agreed, saying that the officers "set out to arrest and search [respondent] in the hope that evidence would develop," and that "since their actions were improper, the police were not entitled to the fruits." 368 F. 2d, at 144. The question is thus whether the fact that the officers were not truthful in telling respondent their intentions required that the evidence found by the policemen after they entered the apartment be barred from admission at respondent's trial as a "fruit" of unlawful police conduct.

The position of the courts below must rest on a view that a policeman's intention to offend the Constitution if he can achieve his goal in no other way contaminates all of his later behavior. In the case before us the syllogism must be that although the policeman's words requested entry for the purpose of asking respondent questions, and the policeman—on being allowed to enter—did nothing to respondent but ask questions, the "fruits" of the policeman's otherwise lawful request to enter and question—the bag tossed out of the window and into a place where it could be seen from the street—should not be usable by the State. This is because the policeman was willing, had his lawful conduct not developed probable cause justifying respondent's arrest, to search respondent's apartment unlawfully in the hope of finding evidence of a crime.

That such a rule makes no sense is apparent when one sees it in the context of an abstruse application of the

exclusionary rule, imposed on the States as the only available way to encourage compliance by state police officers with the commands of the Fourth Amendment. See *Mapp* v. *Ohio,* 367 U. S. 643, 652–653 (1961). Because we wish to deter policemen from searching without a warrant, we would bar admission of evidence Officer Mc-Namara discovered by ransacking respondent's apartment without a warrant or a basis for warrantless search. The expanded exclusionary rule applied in the opinions below would be defensible only if we felt it important to deter policemen from acting lawfully but with the plan—the attitude of mind—of going further and acting unlawfully if the lawful conduct produces insufficient results. We might wish that policemen would not act with impure plots in mind, but I do not believe that wish a sufficient basis for excluding, in the supposed service of the Fourth Amendment, probative evidence obtained by actions—if not thoughts—entirely in accord with the Fourth Amendment and all other constitutional requirements. In addition, sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources. I voted to grant certiorari in this case in the hope the Court would state that the Court of Appeals erred in its view that a policeman's unlawful subjective intentions require exclusion of evidence obtained by lawful conduct, and I would not dismiss while the opportunity of so stating remains.

A second ground that could support a view that the officers' entry was unlawful is the position that the policemen's untruths—their failure to tell respondent of their plan—"vitiated" his consent to their entry. I might not agree with, but I could understand, a position that police officers acting without a warrant can obtain lawful consent to enter a home and ask questions only by

explaining to the occupants that they have a constitutional right to deny admission, even to officers of the law conducting an authorized and necessary investigation. But I cannot understand a view that consent is permissible if given in response to a mere request to enter uttered by a policeman wishing only to ask questions but not if given to a policeman who says he wishes to question but in fact intends to do more. If the policeman does more we will bar admission of the fruits of his illegal action. But if he does only so much as he has told the occupant he will do, and so less than he was willing to do, the occupant's consent was to the conduct which occurred; in that case there is no reason to exclude what the policeman learns from doing what the occupant consented to his doing.

There remains a possibility that respondent's confinement may offend the Constitution. When the officers entered respondent's apartment, they had permission to ask questions but no permission to search. Had they looked in closets or drawers, or even in a closed paper bag lying in view, they would have been acting in violation of the Fourth Amendment. The paper bag containing the guns was on a fire escape attached to an apartment other than respondent's, but that alone did not give the officers permission to seize it. The Fourth Amendment's protection extends to "effects" as well as to "persons, houses, papers." Of course "abandoned" property may be seized, *Abel* v. *United States*, 362 U. S. 217, 241 (1960), but neither court below inquired whether Officer Rufo reasonably believed this bag had been abandoned or instead should reasonably have thought respondent had set it on the fire escape temporarily without wishing to abandon it, cf. *Rios* v. *United States*, 364 U. S. 253, 262, n. 6 (1960). If the bag was not abandoned, another question of fact is relevant: whether

Officer Rufo saw that the bag contained guns before he opened it, or opened the bag and then saw the guns. Since neither the District Court nor the Court of Appeals reached these issues, I would vacate the judgment of the Court of Appeals and remand the case to the District Court to determine whether Officer Rufo could have believed that the bag had been abandoned and whether the bag was searched before or after guns were observed.[5]

---

[5] MR. JUSTICE FORTAS, although he does not disagree with the view that the Court of Appeals erred in issuing the writ of habeas corpus for the reasons which it gave, would nevertheless dismiss the writ of certiorari because the record is stale and inadequate with respect to the issue of abandonment. But if it was error to issue the writ of habeas corpus on the grounds relied on by the Court of Appeals—and there is no infirmity in the record with respect to this question—then the judgment should be reversed unless there is some other basis for the issuance of habeas corpus at the behest of this state prisoner. If the record is unclear with respect to this possible additional ground—here the search of the bag and the seizure of the guns—and it is thought undesirable to have the record reopened and the question clarified, the case should simply be reversed, not dismissed so that the erroneous judgment remains in effect. Habeas corpus should not issue and Painten should not be released unless the record clearly justifies such a judgment.