Anthony L. MANNI, Defendant, Appellant,

v.

UNITED STATES of America, Appellee.

No. 6956.

United States Court of Appeals
First Circuit.

March 28, 1968.

Joseph D. Steinfield, Boston, Mass., by appointment of the Court, with whom Hill & Barlow, Boston, Mass., was on brief, for appellant.

John M. Callahan, Asst. U. S. Atty., with whom Paul F. Markham, U. S. Atty., and Albert F. Cullen, Asst. U. S. Atty., were on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

This is an appeal from a conviction on three counts of an indictment charging violation of the Federal Firearms Act, 15 U.S.C. § 902(e). The only question raised is the propriety of the court's denial, after an evidentiary hearing, of defendant's motion to suppress the fire-

arms in question, together with some admissions made by the defendant. 270 F. Supp. 103. The court warrantably found the following. Treasury agents, one Hoban and another, learned that a man by the name of Anthony Manni, living at a certain address in Massachusetts, had purchased eleven small arms in New Hampshire. Hoban obtained a description and the maker's numbers of the arms, and a photograph of Manni. He also learned from the state criminal records that an Anthony Manni of the same address had been convicted of a felony, a necessary element of the offense stated in section 902(e). Even if this was the same Manni, however, Hoban did not know whether Manni had brought the arms into Massachusetts, another element of the offense, or, if so, where they were.

On four occasions Hoban visited Manni's house with another agent, but found only his wife. He told her that he was a Treasury Agent who wanted to talk to her husband, asked her (as he testified without contradiction) where Manni could be found, and tried without success to find him. On March 31, 1966 the agents called again, and Mrs. Manni informed them that Manni was out. They drove away and parked nearby. Ten minutes later they saw defendant Manni, recognizable from his photograph, enter the apartment building. They followed, and when they reached his door it was partly open. "Hoban knocked and the defendant turned toward him. Hoban held up his pocket commission and told the defendant he was from the Treasury Department and had been trying to get hold of him. Manni said: 'Come in.'"

270 F.Supp. at 105. The agents entered, told defendant of their purpose, and stated that he need not answer questions and was entitled to the advice of a lawyer.[1] In plain sight, in a cabinet with a glass door, Hoban could see a number of firearms, some of which, when asked, defendant admitted buying in New Hampshire, but added that he had brought them to Massachusetts disassembled. Hoban requested permission to inspect them, and on receiving it, discovered some on which the numbers coincided with his records. He then asked the defendant if he had done time in state prison, and upon receiving an affirmative answer arrested him, seizing the firearms in the cabinet. No other search was conducted.

The court found that before the agents' entry, conversation, and observation, they did not have probable cause to obtain a warrant.[2] It also found that the purpose of the entry was to engage in the conversation the agents had been seeking for some time, and that Manni knew of this purpose. On this record defendant's case is even less tenable than was the defendant's in Robbins v. MacKenzie, 1 Cir., 1966, 364 F.2d 45, cert. denied 385 U.S. 913, 87 S.Ct. 215, 17 L.Ed.2d 140.[3] While we do not say that the fact that the officers fail to explain to a householder that he need not admit them may not sometimes be relevant on the issue of voluntariness of the consent, the consent was clearly voluntary here[4] unless such a warning must always be given. This entry took place before Miranda v. State of Arizona, 1966, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694. Cf. Stoval v. Denno, 1966, 388 U.S. 293,

1. Hoban did not offer to supply a lawyer, but when defendant later realized he was in trouble, he asked permission to call his lawyer and put through a call, but found him away.

2. This supported finding distinguishes our recent case of Niro v. United States, 1 Cir., 1968, 388 F.2d 535, even if we were to assume that the principle there enunciated applies when the agents were merely seeking to talk rather than to bypass the necessity of obtaining a warrant.

3. The problems in Commonwealth of Mass. v. Painten, 1 Cir., 1966, 368 F.2d 142, cert. dismissed, 389 U.S. 560, 88 S.Ct. 660, 19 L.Ed.2d 770 are not involved here.

4. The defendant's ready complaisance may be wondered at, but the answer is found in his mistaken (see section 901(3)) belief that carrying disassembled guns was not interdicted.

87 S.Ct. 1967, 18 L.Ed.2d 1199. Whether post-*Miranda* we would have to hold that the officer must not only inform the defendant that he need not talk, but must also inform him that he need not afford entry to talk although defendant has an apparent option to talk outside, we need not determine. See dissenting opinion of Mr. Justice White in Commonwealth v. Painten, 1968, 389 U.S. 560 at 566–567, 88 S.Ct. 660, 19 L.Ed.2d 770. Nor need we decide whether opening a glass door to reach a visible object, as distinguished from picking it up when lying loose, e. g., Harris v. United States, 1968, 390 U.S. 234, 88 S.Ct. 992, 19 L.Ed.2d 1067; Fagundes v. United States, 1 Cir., 1965, 340 F.2d 673, is a search.[5] What the officers had already seen and heard justified the arrest, and the arrest, in turn, justified the seizure.

Affirmed.

---

5. We remain of the view that proving consent to a search after a voluntary entry requires a strong showing. See Robbins v. MacKenzie, supra, 364 F.2d at 49.