**Antonio GARCIA, Appellee,**

v.

**STATE of Texas, Appellant.**

No. 929–90.

Court of Criminal Appeals of Texas, En Banc.

April 1, 1992.

Steve W. Simmons, Dist. Atty., and Debra Morgan, Asst. Dist. Atty., for appellant.

Bruce W. Weathers, El Paso, for appellee.

Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLEE'S PETITION FOR DISCRETIONARY REVIEW

CAMPBELL, Judge.

Appellee was charged with unlawful possession of a controlled substance in Penalty Group I, namely cocaine, having an aggregate weight of less than 28 grams. Tex. Health & Safety Code § 481.115. The trial court granted appellee's motion to suppress the cocaine after finding it was the fruit of a search based upon a "pretext stop." The State appealed the trial court's pretrial order, pursuant to Tex.Code Crim.Proc. art. 44.01. The El Paso Court of Appeals held the trial judge had "erred as a matter of law" by granting the motion to suppress, vacated the trial court's order, and remanded the case to the trial court. *State v. Garcia*, 794 S.W.2d 472 (Tex.App.—El Paso 1990). We granted appellee's petition to address the "pretext arrest" theory on which the court of appeals premised its holding.[1] We will affirm.

I.

The following facts are taken from the court of appeals' opinion:

On the afternoon of March 25, 1989, two uniformed El Paso police officers, Duran and Ruiz, were on routine patrol in their assigned district. They observed a tan Cadillac parked at the curb in front of 3717 Finley Street. The address was known to both officers as a frequent "shooting gallery" for drug offenders, as well as a frequent exchange point for stolen property. They had never seen this vehicle at or near the premises before. The officers were not in fact even aware of whether the driver of the vehicle was in that house. Nonetheless, their suspicions were aroused—albeit without sufficient reasonable, articulable facts to justify an investigative stop. They continued their patrol through the nearby streets. One hour later, they were again approaching the 3700 block of Finley, southbound on Latta Street. As they approached the intersection with Finley, they observed the Cadillac pass through the intersection in front of them, eastbound on Finley. Officer Duran testified that he started to follow the Cadillac from the intersection of Latta and Finley street (sic) and then saw the driver continue through the next intersection without stopping at a posted stop sign. Officer Ruiz' testimony was to the effect that they saw the stop sign violation from the first intersection and then turned to pursue the Cadillac. At any rate, Officer Duran pursued the Cadillac, employing both emergency lights and siren to signal the driver to stop. The Cadillac continued, south on Gateway South and then west on Paisano Drive. The Cadillac's progress was stopped by vehicles waiting for a red light on Paisano. Duran stopped to the left and rear of the Cadillac. He approached the driver's window on foot, knocked on the

---

1. We also granted appellee's petition in order to address the court of appeals' finding that appellee's illegal conduct after he was stopped by the police officers was sufficient to attenuate any taint that might have arisen from the initial stop. Given our disposition of the case, we need not address this issue.

glass and asked the driver to lower the window. The Appellee (the driver and sole occupant of the Cadillac) did not comply despite repeated requests. Duran returned to the patrol vehicle and told Officer Ruiz to ask the drivers ahead of the Cadillac to remain in position, blocking Appellee's vehicle, while Duran called for back up (sic). Ruiz walked ahead of the Cadillac. Appellee suddenly backed up even with the patrol vehicle and then accelerated forward at an angle toward Ruiz. Duran shouted a warning, drew his weapon and fired a shot into the passenger door on the Cadillac. Ruiz dodged out of the way. In moving forward, Appellee hooked his rear bumper on the front bumper of the patrol vehicle and began dragging the police unit down Paisano Drive. As the vehicles passed Ruiz, he dove into the passenger seat of the police unit. Duran pursued on foot initially, but was then given a ride by a civilian motorist. Appellee dragged the patrol vehicle approximately two hundred yards before stopping and fleeing on foot into an adjacent residential area. Duran resumed his foot pursuit. Appellee jumped a fence and entered the residence of an elderly woman who was outside. Duran pursued the Appellee inside and found him in a bathroom trying to dispose of several small plastic bags containing what appeared to be cocaine.

*Id.* at 473. Police searched appellee's vehicle and found cocaine. Appellee was charged with the instant offense, as well as with aggravated assault on a police officer. No traffic citations were issued to appellee.

The court of appeals noted that one of the trial court's findings of fact was that appellee committed the stop sign violation. Consequently, the court of appeals framed the "pretext arrest" issue as whether a trial court must suppress evidence seized during an objectively valid detention for a trivial offense, when the arresting officers had a preexisting suspicion of a greater offense at the time of the detention and took advantage of the occurrence of the trivial offense to enhance their investigative opportunities of the greater offense. Id. at 474. After extensive discussion regarding the genesis of the "pretext arrest" doctrine, that court held that, given the actual occurrence of appellee's traffic offense, the officers' actions leading to the stop, search and seizure were proper, regardless of the existence of any preexisting suspicion or desire to stop appellee's automobile.

## II.

Appellee contends that recent decisions of the United States Supreme Court indicate the motivations and bad faith of government officials are relevant and important to a determination of whether a Fourth Amendment violation has occurred. In support of this proposition, appellee cites this Court to *New York v. Burger*, 482 U.S. 691, 107 S.Ct. 2636, 96 L.Ed.2d 601 (1987); *Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987); and *Maryland v. Garrison*, 480 U.S. 79, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987). These cases are not applicable as they are concerned with the scope of various *searches* by law enforcement officials, rather than actual pretext *stop* situations.

Appellee also argues that the purpose of the exclusionary rule is to deter willful or flagrant actions by the police. Appellee contends that since good faith is a consideration given weight in the Fourth Amendment context, bad faith should be considered as well. Appellee avers that the rule proposed by the court of appeals would dilute the deterrent effect of the federal exclusionary rule.

## III.

The term "pretext arrest," as used in the instant case, refers to an "objectively" valid stop for an allegedly improper reason. In other words, a pretext arrest occurs when an individual is validly stopped or arrested for one offense only because law enforcement officials desire to investi-

gate that individual for a different offense—i.e., an offense for which they do not have valid legal grounds to stop or arrest. The pretext arrest doctrine is not new to this Court. See, e.g., *Bain v. State*, 677 S.W.2d 51 (Tex.Cr.App.1984); *Dodson v. State*, 646 S.W.2d 177 (Tex.Cr.App.1983) (op. on rehearing); *Hooper v. State*, 533 S.W.2d 762 (Tex.Cr.App.1976); *Gutierrez v. State*, 502 S.W.2d 746 (Tex.Cr.App.1973); *McDonald v. State*, 415 S.W.2d 201 (Tex. Cr.App.1967).

The leading decision from this Court addressing the pretext arrest doctrine is *Black v. State*, 739 S.W.2d 240 (Tex.Cr. App.1987).[2] In *Black*, homicide detectives were surveilling Black, whom they suspected had committed murder. During the course of their surveillance, the detectives observed Black commit several traffic violations, whereupon they stopped Black and arrested him for suspicion of murder. This Court held that Black's arrest was illegal because the averred traffic violations were relied upon merely as a pretext to circumvent the warrant requirement for their murder case, their subjective intent being to question Black about the murder.[3]

In *Black*, we held that "[a]n arrest for one crime is not permitted to be used as a pretext to search for evidence of another." *Black*, supra at 243, citing *United States v. Lefkowitz*, 285 U.S. 452, 52 S.Ct. 420, 76 L.Ed. 877 (1932). However, the Supreme Court, in *Lefkowitz*, dealt with the legality of a warrantless search incident to arrest when the search was for evidence of the crime for which the defendant was arrested—not for evidence of some other offense. When read carefully, it is apparent that in *Lefkowitz* the Supreme Court actually con-

fronted constitutional limitations on the scope of a search incident to arrest.[4] Given this context, the dicta in *Lefkowitz* that "[a]n arrest may not be used as a pretext to search for evidence," does not directly address the pretext arrest doctrine, as such, that we discussed in *Black* and that the court of appeals addressed in the instant case. *Id.* 285 U.S. at 467, 52 S.Ct. at 424, 76 L.Ed. at 884.

In advancing the pretext arrest doctrine, this Court relied, in *Black*, primarily upon *Amador–Gonzalez v. United States*, 391 F.2d 308 (5th Cir.1968), a panel decision of the Fifth Circuit which concerned a fact situation similar to that of the instant case. In *Black*, we held:

> It is apparent that the instant case fits the criteria for a pretext arrest set out in *Amador–Gonzalez*, supra.... The facts show that the officer did not try to get a warrant, but simply used the traffic violations as a pretext to get around the warrant requirement. Appellant's detention was, therefore, illegal.

*Black*, supra at 245. However, a few months after *Black* was decided, the Fifth Circuit Court of Appeals, sitting en banc, expressly overruled *Amador–Gonzalez*. See *United States v. Causey*, 834 F.2d 1179, 1184 (5th Cir.1987) (en banc).

### IV.

In *Causey*, police received an anonymous tip that defendant Causey had robbed a bank. Because the police believed they lacked probable cause to arrest Causey for the robbery, they sought a way to apprehend and question him about it. The police discovered an outstanding warrant for his

---

**2.** *Gordon v. State*, 801 S.W.2d 899 (Tex.Cr.App. 1990), discussed the pretext issue and purported to overruled *Black*. This was dicta and was not joined by a majority of the Court.

**3.** Although six judges joined the holding that Black's arrest was illegal, two of those six specifically dissented to the plurality holding: "To the extent that *Bain* and *Dodson* stand for the proposition that there can never be a pretext arrest when the defendant actually violated the traffic laws, they are overruled." *Black*, supra at 245.

As our discussion below will demonstrate, the federal foundation upon which *Black's* pretext arrest rationale was built has now collapsed.

**4.** In fact, *Lefkowitz* was essentially a precursor to *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969), concerning the scope of a search incident to arrest. See 1 LaFave, *Search and Seizure*, § 1.4(e) at 91.

arrest that had been issued several years earlier for failure to appear in court to answer a petty theft charge. After verifying the warrant's continued validity, the police arrested Causey, questioned him about the bank robbery, and subsequently obtained a confession to that robbery.

A panel of the Fifth Circuit reversed the conviction, holding that although the conduct of the police was lawful, the arrest was rendered illegal because the exclusive motive with which the warrant was executed was to question Causey about the robbery. *United States v. Causey,* 818 F.2d 354 (5th Cir.1987) (panel op.). The panel concluded this made the arrest "pretextual" and tainted the otherwise voluntary confession. Thus, the subjective intent of the police rendered the otherwise "objectively" valid arrest illegal.

On rehearing en banc, the Fifth Circuit noted that it is not improper for police officers to question a suspect under arrest for one crime about other crimes of which he may be guilty or have knowledge. The majority further noted that, based on the reasoning of the panel, if the police officers who arrested Causey had, in fact, subjectively desired to question Causey about the lesser offense for which he was arrested (failure to appear), then his confession to the greater offense (robbery) would have been properly admitted at his trial. *Causey,* 834 F.2d at 1181. In other words, it was only the subjective bad motives of the arresting officers—and nothing they actually did—that invoked the exclusionary protections asserted by the panel.

The en banc majority, in *Causey,* rejected the panel's rationale on the basis of three United States Supreme Court cases: *Scott v. United States,* 436 U.S. 128, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978); *United States v. Villamonte–Marquez,* 462 U.S. 579, 103 S.Ct. 2573, 77 L.Ed.2d 22 (1983); and *Maryland v. Macon,* 472 U.S. 463, 105 S.Ct. 2778, 86 L.Ed.2d 370 (1985).[5] The Fifth Circuit, en banc, concluded that these

---

**5.** In *Scott,* the Supreme Court emphasized the objective aspect of the term "reasonable" under the Fourth Amendment. The Court noted that the proper analysis of alleged violations of the Fourth Amendment meant an objective assessment of a police officer's actions in light of the facts and circumstances then known to him:

> We have since held that the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action. In *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973), a suspect was searched incident to a lawful arrest. He challenged the search on the ground that the motivation for the search did not coincide with the legal justification for the search-incident-to-arrest exception. We rejected this argument: "Since it is the fact of custodial arrest which gives rise to the authority to search, it is of no moment that [the officer] did not indicate any subjective fear of the respondent or that he did not himself suspect that respondent was armed." Id., at 236, 94 S.Ct., at 477. The Courts of Appeals which have considered the matter have likewise generally followed these principles, first examining the challenged searches under a standard of objective reasonableness without regard to the underlying intent or motivation of the officers involved.

Id. 436 U.S. at 138, 98 S.Ct. at 1723, 56 L.Ed.2d at 178. The Court essentially agreed with the government's position that consideration of a law enforcement official's motives or subjective intent may play some part in applying the exclusionary rule, but only *after* a statutory or constitutional violation is found. Whether a violation has occurred is determined by an objective assessment of the officer's actions in light of the facts and circumstances then known to him.

In *Villamonte–Marquez,* the Supreme Court upheld the "suspicionless boarding" of a sailboat by customs officers pursuant to a statute authorizing them to board a vessel and examine the manifest, papers and other documents. The Court rejected the defendant's contention that the government could not rely upon the statute authorizing boarding because of the presence of a Louisiana state policeman and evidence that the officers were following an informant's tip that a vessel in the ship channel was thought to be carrying marijuana. The Court stated, "This line of reasoning was rejected in a similar situation in *Scott v. United States,* and we again reject it." Id., 103 S.Ct. at 2577, n. 3.

In *Maryland v. Macon,* the Supreme Court reiterated the objective analysis promulgated in *Scott* and *Villamonte–Marquez:*

> Whether a Fourth Amendment violation has occurred "turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time," and not on the officer's actual state of mind at the time the challenged action was taken.... The sale is not retrospectively transformed into a warrantless seizure by virtue of the

Supreme Court cases demonstrate that the subjective reasons a law enforcement official may have for making an arrest or stop are irrelevant to a determination of the legality of that detention:

> Given these Supreme Court decisions in cases indistinguishable in principle from today's case, our circuit cannot maintain, even were it so inclined, a rule so directly contrary to the Supreme Court's. Again and again, in precisely the present context, the Court has told us that where police officers are objectively doing what they are legally authorized to do ... the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted.

*Causey,* supra at 1184.

Our research reveals that eleven of the twelve federal circuit courts have adopted an objective approach to determining the legality of so-called pretext arrests and stops, with only the Ninth Circuit Court of Appeals apparently still adhering to the wholly subjective analysis espoused in *Amador–Gonzalez,* et al.[6] See *United States v. Prim,* 698 F.2d 972 (9th Cir.1983); see also, *United States v. Brewer,* 947 F.2d 404 (9th Cir.1991); *United States v. Lillard,* 929 F.2d 500 (9th Cir.1991).

Seven of the circuit courts have indicated that an entirely objective evaluation must be accorded the facts; that is, the arrest or stop is valid if the police officer had the authority to detain the person, regardless of the officer's underlying subjective reasons or desires for effecting the arrest or stop. See, e.g., *United States v. Mitchell,* 951 F.2d 1291 (D.C.Cir.1991); *United States v. Cummins,* 920 F.2d 498 (8th Cir. 1990); *United States v. Trigg,* 878 F.2d 1037 (7th Cir.1989); *Causey,* 834 F.2d 1179; *United States v. Neresian,* 824 F.2d 1294 (2nd Cir.1987); *United States v. Hawkins,* 811 F.2d 210 (3rd Cir.1987); *United States v. Pringle,* 751 F.2d 419 (1st Cir.1984).

In contrast, three of the twelve circuits employ a modified objective test, briefly stated as "not whether the officer could validly have made the stop but whether under the same circumstances a reasonable officer would have made the stop in the absence of the invalid purposes." *United States v. Smith,* 799 F.2d 704, 708 (11th Cir.1986); see also, *United States v. Crotinger,* 928 F.2d 203, 206 (6th Cir.1991); *United States v. Guzman,* 864 F.2d 1512 (10th Cir.1988). Although theoretically distinguishable from a wholly objective analysis, application of this modified objective test can be remarkably similar to it. See *United States v. Bates,* 840 F.2d 858 (11th Cir.1988). Because we find that, in practice, the modified objective approach seems at worst unworkable and at best highly problematic, we reject it in favor of the prevailing, entirely objective approach adopted by a majority of the federal circuit courts.[7]

officer's subjective intent to retrieve the purchase money to use as evidence.
*Maryland v. Macon,* 105 S.Ct. at 2783 (citations omitted).

Subsequent to the en banc opinion in *Causey,* the United States Supreme Court decided *Graham v. Connor,* 490 U.S. 386, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). In *Graham,* the Supreme Court held that claims concerning the use of excessive force by law enforcement officials in the course of an arrest, investigatory stop, or other "seizure" of a person, should be analyzed under the fourth amendment "reasonableness" standard and not a substantive due process approach. In discussing application of the "reasonableness" approach, the Court emphasized the objective nature of the inquiry without regard to the underlying intent or motivation of the officials and referenced *Scott.* The Court noted that evidence of intent or motivation may be relevant in assessing the credibility of the officer's account. Id., 109 S.Ct. at 1873, n. 12.

**6.** As of the writing of this opinion, it is unclear whether the Fourth Circuit Court of Appeals would adopt an objective or modified objective approach; however, a recent unpublished opinion suggests that the court would not follow the strictly subjective test of *Amador–Gonzalez.* See, e.g., *United States v. Brown,* 896 F.2d 1368 (4th Cir.1990) (unpublished op.).

**7.** The modified objective test used by the Tenth and Eleventh circuit courts differs from the objective test by focusing the analysis on what a reasonable officer *would* do, not whether, in the abstract, the facts and circumstances support a legal stop.

## V.

■ The above-cited Supreme Court and federal court cases persuade us that, for Fourth Amendment purposes,[8] the validity of an arrest or stop should be determined solely by analyzing objectively the facts surrounding the event. We discuss, briefly, two of the primary reasons why the objective approach clearly makes more sense, and is more reasonable in terms of application, than is an attempt to determine an officer's subjective reasons for a "pretext" detention.[9]

First, an objective evaluation of the facts and circumstances surrounding a stop or arrest comports with the federal exclusionary rule and its deterrence rationale. The

exclusionary rule was designed to prevent unlawful police *conduct,* and our Fourth Amendment jurisprudence has evolved around this core concept. "[T]he reason lies in the purpose of [the exclusionary] rule: to deter *unlawful* actions by police. Where nothing has been done that is objectively unlawful, the exclusionary rule has no application and the intent with which [police officers] acted is of no consequence." *Causey,* supra at 1185. Expanding the exclusionary rule to cover pretext arrests

> would be defensible only if we felt it important to deter policemen from acting lawfully but with the plan—the attitude of mind—of going further and acting unlawfully if the lawful conduct pro-

> That an officer theoretically could validly have stopped the car for a possible traffic infraction [i]s not determinative. Similarly immaterial [i]s the actual subjective intent of the deputy. [A] stop [i]s unreasonable not because the officer secretly hope[s] to find evidence of a greater offense, but because it [i]s clear that an officer would have been uninterested in pursuing the lesser offense absent that hope.

Id. at 1517, quoting *United States v. Smith,* 799 F.2d 704, 710 (11th Cir.1986) (emphasis in original). *Guzman* sums up this standard by stating, "'the proper basis of concern is not with why the officer deviated from the usual practice in this case but simply that he did deviate.' 1 W. LaFave, supra, § 1.4(e), at 94." *Guzman,* supra, at 1517 (emphasis in original).

The modified objective approach requires a determination of standard police procedure and practice in a given locale. In *Guzman,* for example, if police officers in New Mexico were required to or did routinely stop most cars in which the driver was not wearing a seat belt, the stop was proper. If officers rarely stopped seat belt law violators, the stop violated the Fourth Amendment, at least as to any evidence obtained as a result of the stop, aside from the actual traffic violation. The stop for the violation itself is proper; it is only obtaining the other evidence as a result of such stop that is invalid.

Of course, the rationale for this test is to limit the arbitrariness of police action, particularly when a traffic offense is the stated basis for the stop. Because police officers have discretion whether to stop a person for a traffic offense, the concern is that the ease with which law enforcement officials may detect and detain individuals for these frequent offenses will vest in the hands of the police too great a possibility for the arbitrary exercise of discretionary police power in pretext situations. It can be argued

that this arbitrary action is unreasonable under the Fourth Amendment, because the police seek to investigate for an offense for which they cannot legally stop or arrest. Thus, evaluating a detention under the limited objective approach eliminates the allegedly arbitrary nature of the pretext stop by evaluating the propriety of the stop according to local procedural standards.

The problem with this approach is that it fails to recognize the inherent discretion given police officers in dealing with traffic offenses. The "standard" practice of a particular geographic area may vary greatly depending on the circumstances of the offense, the offender, and the surrounding facts. A police department's policy concerning enforcement of various traffic laws may be to allow the individual officers to decide which offenders to detain, given the myriad factual settings and traffic offenses that occur. Thus, a practical flaw in the limited objective test is that there may not be an easily discernable "standard" or procedure against which to analyze an individual officer's actions, because of the variety of situations in which traffic and similar offenses occur. Unlike a standard policy for inventory searches, situations concerning stops and arrests are not so readily standardized.

8. No claim is made under Article I, § 9 of the Texas Constitution, therefore, pursuant to *Heitman v. State,* 815 S.W.2d 681 (Tex.Crim.App. 1991), no state constitutional analysis is necessary.

9. For a more detailed discussion of the relative merits of the objective approach over the subjective approach, see Note, *Fourth Amendment Pretexts: Are Two Reasons to Stop the Defendant One Too Many?* 41 Baylor L.Rev. 496 (1989).

duces insufficient results. We might wish that policemen would not act with impure plots in mind, but I do not believe that wish a sufficient basis for excluding, in the supposed service of the fourth amendment, probative evidence obtained by actions—if not thoughts—entirely in accord with the Fourth Amendment.

*Massachusetts v. Painten,* 389 U.S. 560, 565, 88 S.Ct. 660, 663, 19 L.Ed.2d 770 (1968) (White, J., dissenting to improvident grant).

It makes little sense to maintain the pretext arrest doctrine solely to deter the subjectively bad intentions of law enforcement personnel when these intentions do not ultimately manifest themselves in any objectively ascertainable Fourth Amendment violations. Thus, as long as the facts and circumstances show a valid and legal detention, it serves no actual Fourth Amendment function to attempt to unearth the subjective reasons for such detention.[10]

Second, application of the subjective "pretext arrest" doctrine espoused in *Amador–Gonzalez v. United States,* 391 F.2d 308 (5th Cir.1968), et al., presupposes the ability to successfully determine a police officer's state of mind at the time of the detention. But the subjective intent of a police officer is neither easily nor consistently ascertained by courts:

> [S]urely the catch is not worth the trouble of the hunt when courts set out to bag the secret motivations of police in this context. A subjective purpose to do something that the applicable legal rules say there is sufficient objective cause to do can be fabricated all too easily and undetectably. Motivation is, in any event, a self-generating phenomenon: If

a purpose to search for heroin can legally be accomplished only when accompanied by a purpose to search for a weapon, knowledgeable officers will seldom experience the first desire without a simultaneous onrush of the second.

Amsterdam, *Perspectives on the Fourth Amendment,* 58 Minn.L.Rev. 349, 436–437 (1974); see also, Note, supra footnote 9, 41 Baylor L.Rev. at 522–24.[11]

## VI.

■ In light of overwhelming federal authority, we find that the "pretext arrest" doctrine, as applied in *Black* under the aegis of the federal exclusionary rule, is no longer viable as a matter of Fourth Amendment jurisprudence. In its place, we adopt the rule explicated in *Causey:* As long as an actual violation occurs, law enforcement officials are free to enforce the laws and detain a person *for that violation,* regardless of whatever the usual practices or standards of the local law enforcement agency are and regardless of the officer's subjective reasons for the detention. Thus, the appropriate limitation of an officer's discretion, under the Fourth Amendment, is the existence of a law and the actual commission of the offense; an officer's subjective intent is relevant only to a credibility determination of his stated reasons for stopping or arresting an individual.

In the instant case the record shows, and the trial court found, that appellee committed a stop sign violation. Therefore, the police officers, stop and detention of appellee for a traffic violation was reasonable under Fourth Amendment principles, notwithstanding their illicit motives, if any, for

---

10. Appellee points to the good faith exception to the exclusionary rule to argue that subjective intent is a factor in fourth amendment analysis. However, the good faith exception does not come into consideration until an objective evaluation shows a constitutional violation. Only at that point do subjective considerations become involved. In the pretext arrest setting, the facts must first be viewed objectively to determine whether a constitutional violation has occurred.

11. Even those who advocate a different Fourth Amendment analysis acknowledge the folly of a subjective intent analysis. See 1 LaFave, *Search and Seizure,* § 1.4(e) at 96 (noting the "sound notion (expressed earlier by three members of the Court in *Massachusetts v. Painten* ) that 'sending state and federal courts on an expedition into the minds of police officers would produce a grave and fruitless misallocation of judicial resources.' " See also, 2 LaFave, *Search and Seizure,* § 5.2(e) pp. 459–461.

doing so. The judgment of the Court of Appeals is affirmed and this case is remanded to the trial court for proceedings consistent with this opinion.

CLINTON and OVERSTREET, JJ., dissent.

MILLER, Judge, concurring.

I would adopt, for purposes of interpreting the Fourth Amendment, the "modified objective test" (page 942) used by the Sixth, Tenth, and Eleventh Circuits. Under the facts of this case, the same result would be reached using either test; thus I concur in the result.