# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-08-00101-CR

**Manuel Barrientes, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT NO. D-1-DC-05-201674, HONORABLE MICHAEL LYNCH, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Manuel Barrientes guilty of the aggravated sexual assault of a child, and the court assessed a twenty-four year prison term. *See* Tex. Penal Code Ann. § 22.021 (West Supp. 2008). Appellant brings forward four issues urging that his statement to the police should have been suppressed, a pretrial photographic identification was impermissibly suggestive, and a photograph of the complainant and a recording of a telephone call were erroneously admitted. We overrule these contentions and affirm the conviction.

On April 1, 2005, the thirteen-year-old complainant was sexually assaulted in the back seat of an automobile by two men who called themselves "Manny B" and "Big C." The complainant had met the men earlier that afternoon at a convenience store. The complainant was taken home by the men following the assaults. She immediately told her mother what had happened, and her mother called the police.

This incident received a large amount of media coverage, which in turn generated numerous calls to Crime Stoppers. From information received in these calls, the police were able to identify "Manny B" as appellant and "Big C" as Duran Souza. On April 6, the complainant was interviewed by a victim's services counselor and shown two sets of six photographs, one of which contained a photograph of appellant. The complainant identified appellant's photo as "Manny B." Also on April 6, appellant called Crime Stoppers, identified himself, and was connected to Officer Anthony Nelson. Appellant told Nelson that he and Souza wanted to meet with him and tell their side of the story. Nelson agreed to meet appellant and Souza in a parking lot near the police department's child abuse office. Nelson testified that before meeting appellant, he ran a warrant check and learned that there were outstanding warrants for appellant's arrest.[1]

The meeting took place as arranged. Nelson frisked both men for weapons, noticed the odor of marihuana, and advised them not to bring drugs to the interview. Nelson then instructed appellant, who was driving his own car, to follow Nelson's vehicle to the police office. Nelson testified that as he waited at a red light, he noticed in his rear-view mirror that appellant and Souza had "a little panic in their faces." When the light turned green, appellant did not follow Nelson but instead turned "and began to evade." Nelson pursued appellant and called for backup. Appellant was stopped, and both he and Souza were handcuffed and transported to the child abuse office. There, appellant gave a written statement in which he admitted having sexual intercourse with the complainant but claimed that it was consensual.

---

[1] Another officer testified that the warrants were for a probation violation and some traffic tickets.

**STATEMENT**

Appellant objected to the admission of his written statement on the ground that it was the product of an unlawful warrantless arrest. The trial court overruled this contention after finding that there were outstanding warrants to arrest appellant, albeit not for this offense. The court further ruled that the police were authorized to arrest appellant without a warrant because they had probable cause to believe that he had sexually assaulted the complainant and there were exigent circumstances that justified them in the belief that there was no time to procure a warrant. *See* Tex. Code Crim. Proc. Ann. art. 14.04 (West 2005).

Appellant urges that the trial court erred by relying on the outstanding warrants to justify his arrest. He points out that Nelson testified that he had no prior intention to arrest appellant that day and argues that "the determination to arrest [appellant] had everything to do with [appellant] deciding not to voluntarily make a statement to the police, and not any potentially outstanding warrants." Appellant did not make this "pretext arrest" argument to the trial court. Moreover, the validity of an arrest is not determined by the subjective motivations of the officer who makes the arrest but by the objective facts surrounding the arrest. *Garcia v. State*, 827 S.W.2d 937, 943-44 (Tex. Crim. App. 1992). The objective fact is that Nelson knew that there were outstanding warrants for appellant's arrest. Finally, appellant does not challenge the trial court's alternative ruling that the arrest was lawful under article 14.04.[2] For all of these reasons, we overrule appellant's

---

[2] In a single sentence in his brief, appellant asserts that "the facts of this arrest do not meet the facts of Article 14.03 of the Code of Criminal Procedure." *See* Tex. Code Crim. Proc. Ann. art. 14.03 (West Supp. 2008). The trial court did not cite article 14.03 as a basis for its ruling.

contention that his written statement was tainted by an unlawful arrest and that the trial court erred by overruling his objection to its admission on that ground.

Appellant also objected to the admission of his statement on the ground that he was not shown to have voluntarily waived his rights under *Miranda* and article 38.22. *See Miranda v. Arizona*, 384 U.S. 436 (1966); Tex. Code Crim. Proc. Ann. art. 38.22, § 2 (West 2005). Appellant does not deny that he was advised of his rights, but he complains that he was never asked if he wished to waive his right to remain silent.

Appellant's statement was taken by Officer Anthony Bigongiari. The officer testified that he advised appellant of his rights before questioning him, that appellant appeared to understand those rights, and that appellant told him that he wanted to make a statement. Bigongiari acknowledged that after advising appellant of his rights, he never specifically asked appellant if he wished to waive those rights. The trial court ruled that no "magic words" were required and that the totality of the circumstances demonstrated that appellant made a knowing and voluntary waiver of his right to remain silent.

The Supreme Court has held that a waiver of the right to remain silent may be inferred from the actions and words of the suspect, and that "an explicit statement of waiver is not invariably necessary." *North Carolina v. Butler*, 441 U.S. 369, 373-76 (1979). The "blue card" from which Bigongiari read appellant his rights was introduced in evidence. On the back of the card is the preprinted statement, "I have received and understand the warning on the other side of this card. I agree to waive these Rights and to make a Statement." Appellant signed the card below this statement after being advised of his rights. Below appellant's signature are the date, the time, and

4

Bigongiari's signature as witness. The written statement itself also begins with a listing of appellant's rights, each initialed by appellant. Below this is the statement, "I do hereby knowingly, intentionally and voluntarily waive my right to be silent and my right to have a lawyer present to advise me. I make the following statement in writing without any threats or promises of any kind having been made to me." We agree with the trial court that the record demonstrates that appellant knowingly and voluntarily waived his rights under *Miranda* and article 38.22, including the right to remain silent.

No error in the admission of appellant's written statement to the police is presented. Issue one is overruled.

### IDENTIFICATION

By his fourth issue, appellant challenges the propriety of the April 6, 2005, photographic lineup in which he was identified by the complainant. He contends that this photo lineup was unduly suggestive, and that the trial court erred by admitting both the evidence of the pretrial photographic identification and the complainant's in-court identification.

The record reflects that appellant objected to the testimony of the victim's services counselor who conducted the photographic lineup, but he did not object to the complainant's in-court identification. Because appellant did not present to the trial court his contention that the in-court identification was tainted by the earlier photographic lineup procedure, this contention was not preserved for review. *See* Tex. R. App. P. 33.1(a).

A photographic lineup must contain individuals who fit the rough description of the suspect, but it is not essential that each individual photograph be identical.

*Brown v. State*, 64 S.W.3d 94, 100 (Tex. App.—Austin 2001, no pet.). In *Brown*, the defendant contended that the photo spread was impermissibly suggestive because his photograph was overexposed, making it distinguishable from the others. *Id.* We noted, however, that each of the six photographs in the spread was of a young African American with short hair and comparable facial features, each man was wearing similar clothing, and the backgrounds of all the photographs were similar. *Id.* We also noted that the complainant was not told that a suspect was included in the spread. *Id.* at 101. We held that the photographic array was not impermissibly suggestive. *Id.*

In the case now before us, the victim's services counselor showed the complainant two sets of six photographs. Appellant's photograph was in only one of the sets, and his was the only photograph identified by the complainant.[3] The counselor testified that before showing the complainant the photographs, "I told her that the suspects in the case may or may not be included in the lineup and that she should not feel compelled to identify somebody." The challenged photo spread consists of six photographs of young Hispanic males, each of whom has short hair and is wearing a black shirt. All six photographs appear to have been taken against a blank background but, for some reason, the backgrounds in two of the photographs, including appellant's, are noticeably darker than the backgrounds in the other four photographs. Appellant contends that this difference in the background darkness rendered the photo spread impermissibly suggestive. Considering the totality of the circumstances, however, we agree with the trial court that this

---

[3] Appellant challenges only the set of six photographs that included him. The second set of photographs does not appear in the record.

one factor did not unduly single out appellant's photograph so as to render the identification procedure impermissibly suggestive.

The trial court did not err by admitting evidence of the complainant's pretrial identification of appellant. Issue four is overruled.

## OTHER ISSUES

In issue two, appellant contends that the trial court erred by admitting State's exhibit one, a recording of the 911 call made by the complainant's mother after the complainant told her about the assault. Appellant contends that because both the complainant and her mother testified, the recording was cumulative and its probative value was outweighed by the danger of unfair prejudice. *See* Tex. R. App. P. 403.

In issue three, appellant contends that the trial court erred by admitting State's exhibit two, a photograph of the complainant. The complainant's mother testified that the photograph, which appears to be an ordinary studio portrait, accurately shows the complainant's appearance in 2005. Appellant contends that because the complainant's age and appearance were not at issue, this exhibit was also more prejudicial than probative.

Appellant objected to the admission of the 911 recording, but not on the ground he now urges on appeal. *See* Tex. R. App. P. 33.1(a). Appellant did not object to the admission of the complainant's photograph. Appellant argues, however, that the admission of the photograph was "plain error" under federal case law. Although not cited by appellant, we also note that the rules of evidence allow the consideration on appeal of fundamental errors affecting substantial rights even though they were not brought to the attention of the trial court. Tex. R. Evid. 103(d).

7

Appellant refers us to no case authority holding that the admission of similar evidence under similar circumstances was plain or fundamental error. We find no basis in the record for concluding that the admission of either exhibit one or exhibit two was so manifestly improper as to constitute fundamental error that should be considered in the absence of a pertinent trial objection. Issues two and three are overruled.

The judgment of conviction is affirmed.

_____

J. Woodfin Jones, Chief Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed:   March 18, 2009

Do Not Publish