Opinion Issued October 31, 2002






 








In The

Court of Appeals

For The

First District of Texas






NO. 01-01-00475-CR






NEWELL RANDLE, Appellant


V.


THE STATE OF TEXAS, Appellee






On Appeal from the 240th District Court

Fort Bend County, Texas

Trial Court Cause No. 33111A






O P I N I O N


 A jury found appellant, Newell Randle, guilty of possession of a controlled
substance and assessed punishment at 20 years in prison. We address whether the
trial court abused its discretion by (a) admitting a tape-recorded statement in which
appellant gave an inaudible answer to the question of whether he understood one of
his rights, (b) finding that the statement was not tainted by an unlawful arrest, (c)
finding that appellant admitted in the statement that he ran a stop sign, and (d) finding
that an officer was able to observe appellant run a stop sign by viewing appellant
from an adjacent alleyway through buildings. We affirm.

Facts

 The Fort Bend County Narcotics Task Force ("the Task Force") was
conducting surveillance of a suspected drug dealer named Guy Williams, who resided
at 209 Fourth Street, Rosenberg, Texas. The Task Force placed a wiretap on
Williams' telephone and monitored his telephone calls and any activity around his
residence.

 On August 23, 1999, the Task Force intercepted two phone calls between
appellant and Williams. The intercepted conversations discussed an imminent illegal
drug transaction. Approximately 15 minutes later, appellant arrived at Guy Williams'
residence and the Task Force set up in strategic locations. 

 The Task Force observed appellant at Williams' house for approximately five
minutes before appellant drove away. Task Force member Sergeant Kenneth Ray
Seymour advised patrol units to stop the car appellant was driving. Officer Willie
McQueen was parked in an alleyway between Fifth Street and Sixth Street when he
saw appellant's car approaching. 

 Sergeant Seymour, who was following two cars behind appellant, observed
appellant run a stop sign at Sixth Street and Avenue F. Officer McQueen saw
appellant run a stop sign at Sixth Street and Avenue E and another stop sign at Sixth
Street and Avenue F. The record is unclear, but Officer McQueen was apparently
traveling on an adjacent alleyway when he observed appellant run at least one of the
two stop signs. Even though houses and buildings partially obstructed his view,
Officer McQueen clearly saw appellant run the stop signs. 

 Officer McQueen stopped appellant for running the two stops signs. Officer
McQueen instructed appellant to get out of his vehicle and noticed that appellant
appeared to be nervous. Officer McQueen asked appellant if he had any contraband
inside his vehicle. Appellant gave Officer McQueen consent to search his vehicle.
Officer McQueen's search of the vehicle did not reveal any contraband. 

 Subsequently, Officer McQueen handcuffed appellant and placed him under
arrest for running the two stop signs. Officer McQueen patted down appellant, and
escorted him to Officer Andrew McKissack's patrol car. Prior to placing appellant
in Officer McKissack's patrol car, Officer McQueen lifted the back seat of the car to
check for contraband, pursuant to standard procedure. Officer McKissack transported
appellant to the Rosenberg city jail, and, upon removal of appellant from the vehicle,
he observed a powdery white substance throughout the back seat. The white powdery
substance was sent to the Texas Department of Public Safety for testing and was
identified as 4.33 grams of cocaine.

 Appellant was subsequently arrested on April 27, 2000, pursuant to an arrest
warrant, for possession of the cocaine. On April 28, 2000, Detective Remon Green
and Special Agent Shayne Kelley met with appellant while he was in custody at the
Rosenberg Police Department. Detective Green went over appellant's rights with
him. Appellant stated that he understood his rights and that he waived them. During
the tape-recorded statement, appellant stated that he possessed the cocaine and tried
to dump it in the back seat.

Admissibility of Statement

 In his first point of error, appellant raises two arguments: (1) the tape-recorded
statement should not have been admitted because appellant gave an inaudible answer
to the question of whether he understood one of his rights; and (2) the statement
should not have been admitted because it was the fruit of an unlawful pretext arrest. 
In his second point of error, appellant raises two additional arguments: (1) the trial
court abused its discretion in admitting appellant's statement because the trial court
misinterpreted a portion of the tape as containing an admission by appellant that he
ran the stop signs; and (2) one officer's testimony that appellant ran the stop sign was
incredible because the officer could not have viewed the offense from an adjacent
alleyway through buildings.


 Standard of Review


 In a suppression hearing, the trial court is the sole trier of fact, and judge of
both the credibility of the witnesses and the weight to be given their testimony.
Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial court may
accept or reject all or any part of a witness's testimony. Alvarado v. State, 853
S.W.2d 17, 23 (Tex. Crim. App. 1993). An appellate court must view the evidence
in the light most favorable to the trial court's ruling at the suppression hearing. Upton
v. State, 853 S.W.2d 548, 553 (Tex. Crim. App. 1993). In reviewing the trial court's
decision, an appellate court does not engage in its own factual review; rather, it
determines only whether the record supports the trial court's fact findings. Corea v.
State, 52 S.W.3d 311, 315 (Tex. App.--Houston [1st Dist.] 2001, pet. ref'd).
However, we will conduct a de novo review of the court's application of law to those
facts. State v. Ross, 32 S.W.3d 853, 856 (Tex. Crim. App. 2000).


 Tape-Recorded Statement Partially Inaudible


 Appellant first contends the trial court abused its discretion in denying his
motion to determine the admissibility of his tape-recorded statement due to its
"inaudible nature." Specifically, appellant contends that, because the tape-recorded
statement is inaudible at the point where he answered the question of whether he
understood one of his rights, appellant did not voluntarily waive all of his rights. 
During the tape-recorded statement, the following occurred:

DETECTIVE GREEN: Did you see his ID? Did you see it? Okay.
Before we start, I'm going to go ahead and read you your Miranda
warning. Okay. Listen to me very carefully and make sure you
understand it. If you don't understand something, let me know you
didn't understand it; and I'll reread it to you. Okay?


DEFENDANT: Yes, sir.

DETECTIVE GREEN: The first one is: You have a right to remain
silent and not make any statements at all, and any statements you make
may be used against you, and probably will be used against you, at your
trial. Do you understand that right?


DEFENDANT: Yes, sir.


DETECTIVE GREEN: Okay. Any statement you make may be used as
evidence against you in Court. Do you understand that right?


(Inaudible answer.)


DETECTIVE GREEN: Okay. You have the right to have a lawyer
present to advise you prior to and during any questioning. Do you
understand that right?


DEFENDANT: Yes, sir.


DETECTIVE GREEN: Okay. If you are unable to employ a lawyer, you
have the right to have a lawyer appointed to you prior to and during any
questioning. Do you understand that right?


DEFENDANT: Uh-huh.


DETECTIVE GREEN: You have the right to terminate this interview at
any time. Do you understand that right?


DEFENDANT: Yes, sir.


DETECTIVE GREEN: The rights that I read to you, do you knowingly,
intentionally, and voluntarily waive those rights to speak with us in
regards to the things we have to speak to you about?


DEFENDANT: Yes.


DETECTIVE GREEN: You do? Okay. First of all, before I close this up,
do you understand all your rights? You understand?


DEFENDANT: I know them.


DETECTIVE GREEN: All right. Okay. We didn't go too fast or
nothing?


DEFENDANT: No.


DETECTIVE GREEN: All right. Everything was clear?


DEFENDANT: Yes, sir.


 Subsequently, appellant confessed to being in possession of a controlled
substance. The court made findings of fact, namely that "the defendant voluntarily
waived all his constitutional rights prior to making his oral statement contained in the
tape." Further, the court found that "the tape was audible, albeit scratchy,
understandable, and that it was operated properly." Tex. Code Crim. Proc. Ann. art.
38.22 § 3 (Vernon 2002). (1) 


 In reviewing the voluntariness of a confession, we look at the totality of the
circumstances. Barefield v. State, 784 S.W.2d 38, 41 (Tex. Crim. App. 1989). Once
the accused claims that the confession was not voluntary, the burden is upon the State
to prove its voluntariness. See Farr v. State, 519 S.W.2d 876, 880 (Tex. Crim. App.
1975). Here, appellant is apparently relying upon a violation of article 38.22, section
3(a)(2) and (e), which requires strict construction of the requirement that the
recording show that an accused knowingly, intelligently, and voluntarily waives his
rights. Tex. Code Crim. Proc. art. 38.22, § 3(a)(2), (e) (Vernon Supp. 2002). The
only exception is that a warning, which is a fully effective equivalent to the statutory
warnings is sufficient. Tex. Code Crim. Proc. art. 38.22, §3(e)(2) (Vernon Supp.
2002).

 First, the record shows that appellant was given his statutory rights precisely
as contained in article 38.22 of the Code of Criminal Procedure. The only omission
was one answer by appellant to the question of whether he understood he was
waiving his right to not have any statement he made used as evidence against him in
court. From the answers that are intelligible, however, we are able to discern that
appellant understood that he had the right to remain silent; that anything he said could
be used against him at his trial; that he could have a lawyer present during any
questioning; that if he could not afford a lawyer, one would be appointed to him; and
that he could terminate the interview at any time. Appellant was also instructed to let
the detective know if appellant did not understand any right, and appellant never told
the detective he did not understand any right. After the detective elicited an
affirmative response to whether appellant understood each right, the detective said
"Okay" before proceeding with the next right, and the detective said "Okay" after
appellant's inaudible answer to whether appellant understood his second right. The
recording also explicitly shows that appellant knowingly, intentionally, and
voluntarily waived all of his rights. Thereafter, appellant was again asked if he
understood all of his rights, and appellant stated, "I know them." He agreed that the
officer had not gone too fast in reading appellant his rights, and that everything was
clear. 

 Under these circumstances, it is clear that appellant understood he was waiving
his right to not have any statement he made used as evidence against him in court,
even though his answer to the question of whether he understood this right was
inaudible. Indeed, from the audible portions of the tape, it is clear that the inaudible
answer was in the affirmative. We hold that the trial court did not abuse its discretion
in finding that appellant gave a voluntary, knowing, and intelligent waiver of his
rights during the interview. We overrule appellant's first argument under his first
point of error. 


The discussion of the remaining points of error does not meet the criteria for
publication, Tex. R. App. P. 47, and is thus ordered not published.


We affirm the judgment of the trial court.

__________________________________________________________________



 Lawfulness of Traffic Stop


 In his second argument under his first point of error, appellant contends that
the trial court abused its discretion in admitting appellant's taped statement because
it was the fruit of an unlawful pretext arrest for a traffic stop.

 The Texas Transportation Code provides that "the operator of a vehicle
approaching an intersection with a stop sign shall stop . . . before entering the
crosswalk on the near side of the intersection," and an officer may arrest any person
seen committing a traffic offense, with an exception of speeding offenses. Tex.
Transp. Code Ann. § 544.010(a), (c) (Vernon 2002); see also Tores v. State, 518
S.W.2d 378, 380 (Tex. Crim. App. 1975). 

 Appellant complains that the traffic violation was used as a pretext for the stop.
A "pretext arrest" occurs when an individual is validly stopped or arrested for one
offense only because law enforcement officials desire to investigate that individual
for a different offense, for which they do not have valid legal grounds to stop or
arrest. Garcia v. State, 827 S.W.2d 937, 939-40 (Tex. Crim. App. 1992).


 It appears that Officer McQueen was not interested in apprehending appellant
based upon his failure to stop at the stop signs. The stop of appellant for the traffic
offense was merely a pretext to allow Officer McQueen to investigate whether or not
appellant possessed drugs. However, because appellant violated the transportation
code, the officers were entitled to arrest appellant, regardless of the initial motivating
factor. See Garcia, 827 S.W.2d at 939-40.

 In this instance, the trial court could have believed the officers' testimony that
they observed appellant run the stop signs. Furthermore, appellant did not present
any evidence that disagreed with the officers' testimony. Therefore, the trial court did
not abuse its discretion in holding that Officer McQueen had probable cause to stop
appellant for running the stop signs. 

 Accordingly, we overrule appellant's first point of error.


 Statement Misinterpretation


 In point of error two, appellant first claims the trial court unreasonably
interpreted his tape-recorded statement as an admission to running the stop signs. 
During the tape-recorded statement, appellant answered Detective Green, "He's
[Officer McQueen] saying I ran the stop sign before the tracks and after the tracks. 
He said I ran them, and I turned down Old Richmond Road, and they pulled me over."
Detective Green questioned appellant, "Okay. You said you ran two stop signs. 
Whereabouts were those two stop signs, if you recall?" Appellant then provided the
locations. Appellant claims the trial court interpreted appellant's response to
Detective Green's question as an admission that he ran the stop signs.

 The trial court made findings of fact, namely, that appellant failed to stop his
motor vehicle in obedience of an official stop sign. The record does not reflect what
evidence the trial court utilized to come to that conclusion, and appellant does not
point to anything in the record that shows the trial court used any admission by
appellant in deciding the motion to suppress. Therefore, appellant has not shown that 
the trial court abused its discretion in interpreting appellant's recorded statement. We
overrule appellant's first argument under his second point of error. 


 Incredibility of the Officer


 In his second argument under his second point of error, appellant contends that
Officer McQueen could not have observed appellant run the stop sign because
McQueen was on an adjacent alleyway and would have had to be able to see through
buildings to observe appellant. Thus, appellant argues that the trial court abused its
discretion in admitting appellant's statement, which resulted from the unlawful stop.

 As pointed out above, the trial court is the sole trier of fact. The trial court
could believe all, some, or none of the witnesses's testimony. See Alvarado, 853
S.W.2d at 23. Here, Officer McQueen was not the only officer to testify that
appellant ran a stop sign, and the buildings only obscured the first instance when
appellant ran a stop sign. Sergeant Seymour also saw appellant run one of the stop
signs. Thus, even if the trial court had disregarded Officer McQueen's testimony, the
trial court did not abuse its discretion when it found that appellant ran a stop sign.

 Accordingly, we overrule appellant's second point of error.Conclusion

 We affirm the judgment of the trial court.


 



 Tim Taft

 Justice


Panel consists of Justices Taft, Alcala, and Price. (2)


Publish in part; do not publish. Tex. R. App. P. 47.4.






1. Article 38.22 of the Texas Code of Criminal Procedure provides in pertinent
part:


 (a) No oral or sign language statement of an accused made as a result of
custodial interrogation shall be admissible against the accused in a
criminal proceeding unless:

 (1) an electronic recording, which may include motion picture, video
tape, or other visual recording, is made of the statement;


 prior to the statement but during the recording the accused is
given the warning in Subsection (a) of Section 2 above and the
accused knowingly, intelligently, and voluntarily waives any
rights set out in the warning;



 the recording device was capable of making an accurate
recording, the operator was competent, and the recording is
accurate and has not been altered;



 all voices on the recording are identified; and



 not later than the 20th day before the date of the proceeding, the
attorney representing the defendant is provided with a true,
complete, and accurate copy of all recordings of the defendant
made under this article.


 

. . .


 (e) The courts of this state shall strictly construe Subsection (a) of this
section and may not interpret Subsection (a) as making admissible a
statement unless all requirements of the subsection have been satisfied
by the state, except that:


 
 
 only voices that are material are identified; and
 the accused was given the warning in Subsection (a) of Section 2
above or its fully effective equivalent. 
 
 



 Tex. Code Crim. Proc. Ann. art. 38.22 § 3(a), (e).
2. The Honorable Frank C. Price, former Justice, Court of Appeals, First
District of Texas at Houston, participating by assignment.