In The


 

Court of Appeals



Ninth District of Texas at Beaumont



____________________



NO. 09-05-181 CR


____________________



MEGAN CAROLYNE MURPHY, Appellant



V.



THE STATE OF TEXAS, Appellee






On Appeal from the County Court at Law No. 4


Montgomery County, Texas


Trial Cause No. 04-193495






MEMORANDUM OPINION



 Megan Carolyn Murphy appeals from a conviction for misdemeanor driving while
intoxicated. She argues the trial court erred in denying her motion to suppress a videotape. 
We affirm.

 In reviewing a trial court's ruling on a motion to suppress, an appellate court gives
great deference to the trial judge's determination of historical facts, and reviews de novo the
trial court's application of the law to the facts. Torres v. State, 182 S.W.3d 899, 902 (Tex.
Crim. App. 2005) (citing Maxwell v. State, 73 S.W.3d 278, 281 (Tex. Crim. App. 2002)).
When, as here, the trial court does not file findings of fact, the reviewing court considers the
evidence in the light most favorable to the trial court's ruling. Torres, 182 S.W.3d at 902. 
The appellate court assumes "the trial court made implicit findings of fact that support its
ruling," if the record supports the findings. Id. (citing Romero v. State, 800 S.W.2d 539, 543
(Tex. Crim. App. 1990)). As the trier of fact at the suppression hearing, the trial judge
evaluates the witnesses' testimony and credibility, resolves all conflicts in the testimony, and
may accept or reject any or all of the testimony. Torres, 182 S.W.3d at 902; Ste-Marie v.
State, 32 S.W.3d 446, 448 (Tex. App.--Houston [14th Dist.] 2000, no pet.). The reviewing
court gives almost total deference to the trial judge's evaluation of the demeanor and
credibility of the witness. State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000);
Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). 

 The officer stopped Murphy's vehicle and detained Murphy temporarily for
investigation. The standard for temporary detention is reasonable suspicion. Carmouche v.
State, 10 S.W.3d 323, 328 (Tex. Crim. App. 2000) (citing Terry v. Ohio, 392 U.S. 1, 21, 88
S.Ct. 1868, 20 L.Ed.2d 889 (1968); Davis v. State, 947 S.W.2d 240, 244 (Tex. Crim. App.
1997)). "Reasonable suspicion exists if the officer has specific, articulable facts that, when
combined with rational inferences from those facts, would lead him to reasonably conclude
that a particular person actually is, has been, or soon will be engaged in criminal activity."
Ford v. State, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005) (citing Garcia v. State, 43
S.W.3d 527, 530 (Tex. Crim. App. 2001)). Put another way, reasonable suspicion exists if
those specific, articulable facts would lead the officer to reasonably conclude that "some
activity out of the ordinary is occurring[;] some suggestion to connect the detainee with the
unusual activity[;] and some indication the unusual activity is related to crime." Garza v.
State, 771 S.W.2d 549, 558 (Tex. Crim. App. 1989). The State has the burden of establishing
the reasonableness of the warrantless detention. Ford, 158 S.W.3d at 492 (citing Bishop v.
State, 85 S.W.3d 819, 822 (Tex. Crim. App. 2002)). 

 Murphy maintains the only reason Trooper Liles gave for the traffic stop was that
Murphy was driving a vehicle with an obscured license plate. However, Trooper Liles
testified, as set out below, that he stopped Murphy because of her driving and because of an
"obstructed" license plate:

 Q. [Prosecutor]. All right. On that evening, did you have an occasion to
make a traffic stop of the defendant?

 A. [Trooper Liles]. Yes.

 Q. And what was that for?

 A. I observed the vehicle weaving on and off the shoulder. Actually when
I came head-on with the subject vehicle, I actually went on to the
shoulder thinking that she was going to come in my lane. After I
turned, after I followed the vehicle for some time, driving got a little bit
better, but she still was well below the speed limit, weaving within her
lane. I eventually stopped her for having an obstructed license plate. 

 . . . .


 A. [Trooper Liles] I remember hitting the shoulder, sir. Because I thought
I was going to have a head-on collision.

 Q. [Defense Counsel] You are other side of the highway, right.


 A. I saw her to go on her shoulder.

 Q. You are not saying she crossed all the way into your shoulder, hit your
shoulder?

 A. I don't know if she did or not. I saw headlights coming at me. I took
action.

 Q. What you are saying, now you saw headlights coming at you, you took
action, correct?

 A. Yes. 


Liles' offense report gave similar reasons for the stop. He said he "noticed the vehicle
coming toward [him] in the westbound lane. It was swerving badly off to the shoulder
moving at a very slow speed." Liles' report also stated he initiated the stop because of the
"obscured" license plate. 

 At the beginning of the video, Liles is following Murphy's car. Liles can be heard
commenting, "[V]ehicle doing thirty-three in a fifty-five right now"; "weaving all over
roadway when we approached"; "within a lane of travel, going from line to line." Liles also
mentions something about a license plate, although the audio is unclear at this point. 
Stopping and approaching the vehicle, he first tells the driver she is "driving all over the
lane"; "looks like intoxicated driver just now"; "twenty miles under speed limit"; "looked
liked you were going off into traffic a couple of times." Following more conversation, Liles
asks Murphy to step out of the vehicle. Then, after she steps to the rear of the vehicle, the
trooper informs her she has an "obscured license plate"; he also states, "I thought you were
going to cause an accident by the way you were driving." 

 During his suppression hearing testimony, Liles acknowledged the video does not
show, and his offense report does not reference, Murphy's car appearing to move head-on
toward his vehicle. However, he explained he specifically remembered hitting the shoulder,
and it was not until he had to take this evasive action that he turned on his video camera. 

 In Ford, the Court of Criminal Appeals reiterated that specific, articulable facts are
required to provide a basis for finding reasonable suspicion. Ford, 158 S.W.3d at 493. 
Trooper Liles' account of the stop contrasts with the officer's account in Ford, where the
only testimony offered "relevant to Ford's driving" was that Ford was following another car
too closely. Id. at 491. The Court of Criminal Appeals characterized this description as only
"a conclusory statement that Ford was violating a traffic law." Id. at 493. Here, Trooper
Liles testified the driver was weaving within the lane and weaving on and off the shoulder.
The weaving was so pronounced that Liles, thinking the driver was going to hit him head-on,
took evasive action and moved over onto the highway's shoulder. These are specific,
articulable facts by which a trial court may assess whether the trooper's suspicion was
objectively reasonable. See id. In denying the motion to suppress, the trial judge implicitly
accepted Trooper Liles's testimony. The trial judge also considered the offense report and
viewed the videotape. Unlike the video in Carmouche, the tape here does not present
indisputable visual evidence contradicting essential portions of the trooper's testimony. See
Carmouche, 10 S.W.3d at 331-32.

 An officer may lawfully stop and detain a person for a traffic law violation. Garcia
v. State, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). (1)
 However, even if there is no
violation, a person's "[e]rratic or unsafe driving may furnish a sufficient basis for a
reasonable suspicion that the driver is intoxicated[.]" James v. State, 102 S.W.3d 162, 172
(Tex. App. --Fort Worth 2003, pet. ref'd). The circumstances may be sufficient to establish
reasonable suspicion to stop and detain the driver to investigate the reasons for the erratic
driving. See Davy v. State, 67 S.W.3d 382, 393 (Tex. App.-- Waco 2001, no pet.) (Although
none of the facts standing alone -- driving in circles in a parking lot, driving on the road at
half the posted speed limit, and driving close to right side of road -- sufficed to establish
reasonable suspicion, taken collectively, the facts were sufficient to justify the stop.); State
v. Tarvin, 972 S.W.2d 910, 912 (Tex. App.--Waco 1998, pet. ref'd) ("[M]ere weaving in
one's own lane of traffic can justify an investigatory stop when that weaving is erratic,
unsafe, or tends to indicate intoxication or other criminal activity. . . ."). Murphy's driving 
was sufficiently erratic that it gave rise to reasonable suspicion for Trooper Liles to stop the
vehicle and temporarily detain Murphy for an investigation. See Gajewski v. State, 944
S.W.2d 450, 452 (Tex. App.--Houston [14th Dist.] 1997, no pet); Fox v. State, 900 S.W.2d
345, 347 (Tex. App.--Fort Worth 1995), pet. dism'd, improvidently granted, 930 S.W.2d 607
(Tex. Crim. App. 1996); Townsend v. State, 813 S.W.2d 181, 185 (Tex. App.--Houston [14th
Dist.] 1991, pet. ref'd). We do not determine the officer had authority to make a traffic stop
under the "obscured" license plate statute. (2) See Tex. Transp. Code Ann. § 504.409 (Vernon
Supp. 2005). Because there are no findings of fact, we must assume the trial court made
"implicit" fact findings that support its ruling when the record supports the findings. See
Torres, 182 S.W.3d at 902. Based on the specific, articulable facts related to the erratic
driving alone, the trial court could reasonably conclude Trooper Liles had reasonable
suspicion to stop and detain Murphy for further investigation, even if the trial court found the
license plate was not a sufficient basis for the stop. 

 We hold the trial court did not err in denying Murphy's motion to suppress. Murphy's
issue is overruled. The judgment of conviction is affirmed. 

 AFFIRMED. 

 ___________________________________

 DAVID GAULTNEY

 Justice


Submitted on March 23, 2006

Opinion Delivered May 3, 2006 

Do Not Publish


Before Gaultney, Kreger, and Horton, J.J.

 
1. Murphy argues she did not violate any traffic laws, and, therefore, the traffic stop and
detention were illegal. In contrast, the State maintains Murphy violated Texas law in the
following manner: having an "obstructed" license plate (Tex. Transp. Code Ann. §
502.409(a)(6) (Vernon Supp. 2005)); traveling across the center of a road into oncoming
traffic (Tex. Transp. Code Ann. § 545.051(a) (Vernon 1999)); and failing to maintain a
single lane when movement from the lane could not be made safely (Tex. Transp. Code
Ann. § 545.060(a) (Vernon 1999)). 

2. The officer testified the plate was readable and his partner was able to call in the
plate to obtain information on the vehicle. The statute reads as follows: 

 § 502.409. Wrong, Fictitious, Altered, or Obscured License Plate

 (a) A person commits an offense if the person attaches to or displays on a
motor vehicle a number plate or registration insignia that:

 . . . .

 (6) has an attached illuminated device or sticker, decal, emblem, or
other insignia that is not authorized by law and that interferes with the
readability of the letters or numbers on the plate or the name of the state in
which the vehicle is registered[.]

Tex. Transp. Code Ann. § 502.409(a)(6) (Vernon Supp. 2005) (emphasis added).