In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00084-CR
______________________________


THE STATE OF TEXAS, Appellant
 
V.
 
JUNE SUZANNE KREIE, Appellee


                                              

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 19436


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Opinion by Justice Carter


O P I N I O N

            The State of Texas has appealed from a pretrial order granting a motion to suppress evidence. 
The record shows that a police officer, Bill McFadden, was detailed to watch a house where drug
transactions had been reported and to look for narcotics activity. McFadden testified he followed
June Suzanne Kreie's car as she left the location until she went past a stop line on a street and failed
to stop at a stop sign. She had no driver's license; thus, McFadden placed her under arrest for failure
to provide a license on request and called for a female officer to come and search her. 
            As a result of the stop, contraband was recovered from Kreie. Based on the testimony of the
police officer, the trial court granted the motion to suppress, stating the stop was illegal. 
            Under the present law, an objectively valid traffic stop is not unlawful under Article I,
Section 9 simply because the detaining officer had some ulterior motive for making it. Tex. Const.
art. I, § 9. The objective test is to be applied in determining whether an improper and unlawful stop
occurred. The Texas Court of Criminal Appeals also has held that this is the proper way to apply
the Fourth Amendment to the United States Constitution. Crittenden v. State, 899 S.W.2d 668, 671
(Tex. Crim. App. 1995) (state analysis), relying on Garcia v. State, 827 S.W.2d 937 (Tex. Crim.
App. 1992) (federal analysis), and Hamilton v. State, 831 S.W.2d 326, 330 (Tex. Crim. App. 1992);
see Whren v. United States, 517 U.S. 806, 809-10 (1996) (the question is whether the officer could
have made the stop for the reason given).
            In cases where the trial court concludes that an unlawful or improper stop did not occur, that
usually has the effect of ending our analysis because there is typically evidence that, if believed by
the trial court, would support that conclusion. In this situation, however, where the court granted
the motion to suppress, a different situation may present itself. The Garcia opinion itself, after
concluding no pretext doctrine existed, concluded by recognizing that "the appropriate limitation of
an officer's discretion, under the Fourth Amendment, is the existence of a law and the actual
commission of the offense; an officer's subjective intent is relevant only to a credibility
determination of his stated reasons for stopping or arresting an individual." Garcia, 827 S.W.2d at
944.
            The only testimony before the trial court in this case is the testimony of the arresting officer. 
The State did not request findings of fact, and no written findings of fact were filed. When a trial
court does not make explicit findings of fact, we review the evidence in the light most favorable to
the trial court's ruling and assume it made findings that are supported by the record and buttress its
conclusion. See Carmouche v. State, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). The findings
are not statutorily required, but this analysis appears to be created by the courts in an attempt to
maintain consistency with the general rule that a fact-finder's decision should not be overturned if
there is evidence that could support its finding. In reviewing a ruling on a motion to suppress, we
must defer to the trial court's factual determinations. Guzman v. State, 955 S.W.2d 85, 89 (Tex.
Crim. App. 1997).



            In this case, the officer's testimony was undisputed. The trial court was not required to
believe that evidence. In State v. Ross, 32 S.W.3d 853 (Tex. Crim. App. 2000), the court specifically
reviewed the question of whether a trial court might disbelieve the State's uncontroverted evidence
and therefore act within its discretionary authority by ordering evidence suppressed. 
            In Ross, an alcoholic beverage agent was the only witness to testify at the hearing on the
defendant's motion to suppress. Id. at 854. The agent's testimony, if believed, demonstrated he had
reasonable suspicion to detain the defendant and probable cause to later arrest and search the
defendant. Id. at 857. The trial court granted the motion to suppress without making findings of
fact. Id. at 854. The Texas Court of Criminal Appeals recognized that the trial court might simply
not find the State's agent to be a credible or believable witness. The court acknowledged the witness
had testified to facts that would show reasonable suspicion or probable cause. The court then stated: 
The trial court, however, was free to disbelieve all of the agent's testimony. As the
sole trier of fact and judge of credibility, the trial court was not compelled to believe
the agent's testimony, even if uncontroverted, based on credibility and demeanor. 
Because the evidence, if believed, would compel a denial of the motion to suppress,
the record supports the second theory that the trial court did not find the agent's
testimony to be credible based on demeanor, appearance, and tone. 

 Id. at 857. The court added that, because the "scenario is a mixed question of law and fact, the
resolution of which turns on an evaluation of credibility and demeanor," the proper standard of
review was "'almost total deference' to the trial ruling." Id. at 856 (quoting Guzman, 955 S.W.2d at
89). The same situation was also before the Austin Court of Appeals in State v. Nash, 55 S.W.3d
110, 113 (Tex. App.‒Austin 2001, no pet.), but with the difference that findings of fact were filed
in that case. The Austin court reviewed the findings and concluded they clearly showed the trial
court's disbelief of the officer's testimony. The court applied the Ross analysis and affirmed the
suppression order.
            In this case, like Ross, we likewise have no written findings of fact. There is, however, a
distinction that can be drawn between our case and Ross and Nash. In this case, the trial court made
no written findings, but made several pronouncements from the bench concerning its view of the
evidence. 
            Several cases have held in the context of this type of suppression hearing where no written
findings were made, but the trial court made statements from the bench, that such oral statements
were clearly intended to act as findings of fact. In that context, the Corpus Christi Court of Appeals,
relying on an earlier opinion from the Texas Court of Criminal Appeals, reviewed the record and
found that "the trial court pronounced what apparently were meant to be oral findings of facts [sic]
and we will accord deference to the same." Pena v. State, 61 S.W.3d 745, 752-53 (Tex.
App.‒Corpus Christi 2001, no pet.). In so doing, the court relied on State v. Groves, 837 S.W.2d
103, 105 n.5 (Tex. Crim. App. 1992). In that case, the court held that, where a trial court clearly
intended oral pronouncements to be an expression of its findings of fact and conclusions of law, they
were reviewed by the appeals courts as such.
            The officer's testimony was he had stopped Kreie because she violated a traffic law. If
believed, that would justify the initial stop. Thus, the only theory that could support the trial court's
ruling is that the court did not believe the officer's testimony and that the stop was not lawful.


 Had
the court reached this conclusion, we would be required to defer to the trial court's ruling because
it would necessarily have turned on an evaluation of the credibility of the witnesses. Ross, 32
S.W.3d at 856; Guzman, 955 S.W.2d at 89. 
            In this case, however, the statements by the trial court make it clear that it did not suppress
the evidence because it disbelieved the officer, but instead accepted the facts. The court ended the
hearing as defense counsel began to cross-examine the officer, stating:
THE COURT: We don't need to go any further here. This is a
pretextual stop. It's illegal.

                        . . . . 
 
THE COURT: I'm going to suppress it and everything she did and
everything they've got. This is similar to following people until they touch a line on
a road and then arrest them for getting out of their lanes. The court of criminal
appeals has outlawed that, and we need to outlaw this.

                        . . . .

                                    THE COURT: Pretextual stop all the way.

            From this statement, the basis for the trial court's ruling is clear. It relied on the officer's
admission that he was following Kreie and looking for a violation of any traffic offense in order to
have cause to detain her, for the stated purpose of looking for drugs. However, as stated above,
under the current state of the law, an objectively valid traffic stop is not unlawful just because the
officer had some ulterior motive for making it. 
            The trial court in this case actually suppressed the evidence because it acted on the facts as
presented by the officer, stating he stopped Kreie because she passed the stop line. The trial court
considered that as a pure pretextual stop and found it to be illegal. Thus, we must reverse because
the reason stated by the trial court for suppressing the evidence is contrary to the law. 
            We also recognize that the trial court ended the hearing and issued its ruling before defense
counsel had a chance to cross-examine the officer or to offer any evidence. We therefore remand
the case to the trial court to allow the State and the defense an opportunity to present further evidence
regarding the motion to suppress and other proceedings, as necessary.
            We reverse and remand this matter to the trial court for further proceedings consistent with
this opinion.
 

                                                                        Jack Carter
                                                                        Justice

Date Submitted:          September 26, 2003
Date Decided:             October 24, 2003

Do Not Publish



.416667in">            The contention of error is overruled.
Exclusion of Witnesses
            McMikel next contends the court erred by refusing to permit her to call two witnesses, Bob
Bush and Ray Karrer, who were both connected with programs that would be available to her, and
who had visited with her during the weekend before jury selection—after she was returned to Lamar
County from prison. Bush and Karrer would have testified about the support programs available to
McMikel while in prison and after her release. McMikel did testify about the visits of those
witnesses and her anticipated use of the programs, but the court refused to allow Bush and Karrer
to testify. The State was not made aware of the witnesses until trial was underway, in the midst of
testimony by the next-to-last witness to be called by McMikel.
            Rule 193.6 of the Texas Rules of Civil Procedure requires that witnesses who are not timely
disclosed or identified be excluded unless either the party had good cause for not timely
supplementing discovery responses, or the failure to timely supplement will not "unfairly surprise
or unfairly prejudice the other parties." Tex. R. Civ. P. 193.6. McMikel argues only the first aspect
of this rule: that good cause existed for the failure to timely supplement the response. 
            In support of this position, McMikel points out that the witnesses were not able to meet
personally with her until she was returned to Lamar County the weekend before trial, the New Year's
holiday weekend. The jury was selected January 4, 2005, and the trial began January 5, 2005. 
            The State points out that McMikel had known about the individuals for some time, and had
known that she might call them as witnesses for at least a week before she actually attempted to offer
them January 10. McMikel argued that she had good cause to present Bush's and Karrer's testimony
because, contrary to the Department's arguments, Bush and Karrer would provide evidence that a
support group could be available for McMikel. The trial court overruled the request, and McMikel
made a bill summarizing their expected testimony.
            The trial court has discretion to determine whether the offering party has met its burden of
showing good cause. Aluminum Co. of Am. v. Bullock, 870 S.W.2d 2, 3 (Tex. 1994); Pilgrim's Pride
Corp. v. Smoak, 134 S.W.3d 880, 902 (Tex. App.—Texarkana 2004, pet. denied). The question is
whether the trial court abused that discretion by denying the request. In this case, the court was
confronted by two unexpected witnesses, five days into the trial. Even assuming that McMikel did
not have an opportunity to determine whether those individuals would testify until they had the
opportunity to talk with her, that conversation happened over a week before McMikel attempted to
call them. Under these circumstances, we cannot conclude the court abused its discretion by
determining that good cause was not shown for the delay in disclosure to the time when McMikel
attempted to call the witnesses. 
            The contention of error is overruled.
Sufficiency of the Evidence
            McMikel next contends, with no citation to any controlling authority, that the evidence is
legally and factually insufficient to support the verdict. She quotes the charge instructions and the
jury question, and then complains the evidence does not show that she "knowingly" committed the
actions complained of, due to her intoxication.
            McMikel parses her argument in this fashion—she first focuses on the evidence showing that
the Department closed its case on her two weeks after receiving assessment and recommendations
from its own expert on chemical dependency, Duane Cox—without the Department having ever
reviewed his assessments and recommendations with McMikel. McMikel contends that, because
of the Department's "non-effort," and Cox's criticism of the Department for its failures to attempt to
utilize the more stringent intervention methodology that he had recommended, the Department's
efforts were inadequate. McMikel then states there was evidence she had complied with a court
order (but without indicating which order was referenced, or what evidence to which she is referring)
establishing the actions necessary for her to obtain the return of the children. Finally, she concludes
by stating that there is no evidence she knowingly engaged in conduct that resulted in her conviction
and imprisonment for D.W.I. and endangering a child due to intoxication. 
            In the interest of justice, we will consider the argument so far as it can be reasonably
understood.


 
            Before a parent's right can be involuntarily terminated, the Department must prove by clear
and convincing evidence that (1) the parent has committed one of several enumerated acts, and
(2) termination is in the child's best interest. See Tex. Fam. Code Ann. §§ 161.001, 161.206(a)
(Vernon Supp. 2005). In reviewing the legal sufficiency of the evidence, we view all the evidence
in a light most favorable to the finding to determine whether a reasonable trier of fact could have
formed a firm belief or conviction that its findings were true. Tex. Fam. Code Ann. § 101.007
(Vernon 2002); J.F.C., 96 S.W.3d 256, 266 (Tex. 2002); In re C.H., 89 S.W.3d 17, 25 (Tex. 2002). 
If, in light of the entire record, the disputed evidence that a reasonable trier of fact could not have
credited in favor of the finding is so significant that a trier of fact could not reasonably have formed
a firm belief or conviction, then the evidence is factually insufficient. In re J.F.C., 96 S.W.3d at
266; In re L.C., 145 S.W.3d 790 (Tex. App.—Texarkana 2004, no pet.).
            Because McMikel has not argued that the evidence is legally and factually insufficient to
support the second prong of the test, we address only the first prong. She has also made no effort
to apply her evidentiary contention to any of the individual bases set out in the charge that would
justify termination.
            In this case, there is evidence that in May 2000, the Department was involved in an incident
where the husband was called home from work because McMikel had lost use of one side of her
body, and was shown to have a .22 blood alcohol level. In July, a domestic altercation erupted in
which police were involved—McMikel was also intoxicated at that time. She was directed to
participate in services offered by the Department, which she did until April 21, 2001, when, because
there were no other incidents, the Department ended its intervention. However, in September 2001,
McMikel rear-ended another car while driving and was hospitalized with a measured blood alcohol
level of .63. There was evidence that, at one point, she drank a fifth of vodka while shopping for
groceries and that she had a miscarriage January 20, 2002—she was hospitalized again with a blood
alcohol level of .283 and referred to another alcohol and drug abuse service. She refused that
service. 
            The testimony shows that McMikel admitted driving while intoxicated with A.M.M. in the
car. She was again hospitalized January 25, 2003, with a blood alcohol level of .43. McMikel was
arrested for public intoxication May 1, 2003, and was intoxicated at the city pool May 30, 2003, 
while A.M.M. was with her. Finally, she took A.M.M. to Wade Park September 17, 2003, and while
the three-year-old was playing in the park, McMikel passed out in the car, leaving A.M.M.
unattended. At the time, McMikel was eight months pregnant and was hospitalized with a blood
alcohol level of .44. 
            After A.M. was born, McMikel was placed in and completed another program, and was
allowed to come home with both children after about sixty days, apparently in early January 2004.
She was again found to be intoxicated while the children were in day care, and the children were
removed March 11, 2004. 
            McMikel admitted that she had been convicted of three felony D.W.I. charges and one charge
of endangering a child. Her husband testified he knew she drank a lot and had passed out while
alone with A.M.M. on several occasions.
            We also note there is evidence that her husband was an enabler who resisted her participation
in the services offered, and there was some evidence the husband was responsible for domestic
violence against her. 
            We need go no further in our analysis than Section 161.001(1)(D) of the Texas Family Code. 
Grounds for termination are established if there is clear and convincing proof that the parent has
knowingly allowed the child to remain in surroundings or conditions that endanger the child's
physical or emotional well-being. In this case, it is apparent from a multi-year course of conduct,
interrupted by brief periods of sobriety, that McMikel was addicted to alcohol to such an extent that
she was unable to care for her own infant children.
            Repeated instances of D.W.I., intoxication to the point of lethality and coma, and passing
out at a city park while her child played without other supervision provide legally and factually
sufficient evidence, even without reference to the remaining allegations by the State, to support this
verdict. This pattern of conduct has continued for several years, and the best interests of the children
require termination of the parental rights of McMikel, as she has demonstrated she is incapable of
caring for them.
            The contention of error is overruled.
Violation of the A.D.A.
            McMikel next contends the services offered by the Department were so insufficient as to
violate the A.D.A. See 42 U.S.C.A. §§ 12101–12113 (West 2005). McMikel argues no specific
violation, and cites to no particular portion of the statute which would apply in this instance. We
have been directed to three Texas cases by counsel, which he argues reflects a split of authority about
the proposition that an A.D.A. violation is a defense in a termination proceeding. In the first case,
the Houston First District Court found that an A.D.A. claim was not preserved for its review because
counsel did not plead, prove, or obtain findings on that contention. In re C.M., 996 S.W.2d 269, 270
(Tex. App.—Houston [1st Dist.] 1999, no pet.) (citing Tex. R. Civ. P. 94). In the second case, the
Fort Worth court merely cited C.M. for the underlying concept of preservation of error and did not
address the A.D.A. in any respect. In re J.M.M., 80 S.W.3d 232 (Tex. App.—Fort Worth 2002, pet.
denied). The Beaumont court addressed the issue of whether the A.D.A. was available as an
affirmative defense, and, in agreement with a number of other jurisdictions, declined to create such
a defense. In re S.G.S., 130 S.W.3d 223 (Tex. App.—Beaumont 2004, no pet.).
            This case is in much the same procedural posture as C.M. McMikel did not plead or prove
a violation of the A.D.A., and it was raised for the first time in a motion for directed verdict. 
McMikel argues that the court was, under the evidence, required to grant her motion. The issue has
not been preserved for our review. See Tex. R. Civ. P. 94; Tex. R. App. P. 33.1; see In re B.L.D.,
113 S.W.3d 340, 349 (Tex. 2003). Even if not waived, there is no authority that such a defense
could be properly raised in a proceeding of this nature, and in the context of this case as presented
to this Court, we decline to reach such a conclusion. 
            The contention is overruled.



Claim of Ineffective Assistance of Counsel
            McMikel next contends her counsel was ineffective because the Department and trial court
delayed appointing counsel until June 28, 2004. McMikel states that counsel was not appointed until
a month after the Department had decided to seek termination and argues that this necessarily caused
counsel to be ineffective. McMikel further states the Department had also decided to seek adoption
by the foster family, although there is no showing of how this is relevant to the analysis. 
            Section 107.013(a)(1) of the Texas Family Code requires the trial court to appoint counsel
to represent an indigent parent of the child who responds in opposition to the termination. Tex.
Fam. Code Ann. § 107.013(a)(1) (Vernon Supp. 2005). The record shows that, in this instance,
McMikel hired an attorney in October 2003, who was allowed to withdraw March 15, 2004. Trial
counsel was appointed June 28, 2004, and trial was eventually held in early January 2005. 
            The statutory right to counsel in parental rights termination cases embodies the right to
effective counsel. See In re M.S., 115 S.W.3d 534, 544 (Tex. 2003). The Texas Supreme Court
adopted the test set out in Strickland v. Washington, 466 U.S. 668, 674 (1984), as the standard for
ineffective assistance in civil parental termination proceedings. To prevail on this claim, an 
appellant must prove by a preponderance of the evidence (1) that his or her counsel's representation
fell below an objective standard of reasonableness and (2) that the deficient performance prejudiced
his or her defense. Id. at 687.
            Thus, to meet this burden, an appellant must prove that the attorney's representation fell
below the standard of prevailing professional norms and that there is a reasonable probability that,
but for the attorney's deficiency, the result of the trial would have been different. Tong v. State, 25
S.W.3d 707, 712 (Tex. Crim. App. 2000). Under this standard, a claimant must prove that counsel's
representation so undermined the proper functioning of the adversarial process that the trial cannot
be relied on as having produced a just result. Strickland, 466 U.S. at 686. 
            Although we do not believe, especially in light of the nature of this type of proceeding, that
the court should delay in appointing counsel, McMikel has suggested no way in which the
three-month time period she was without counsel in this case was harmful. Effectiveness of counsel
is not measured merely by the date of appointment of counsel, but by the impact of the appointment
and counsel's actions thereafter. Error has not been shown, and no argument has been presented that
persuades us any harm existed in this case. 
            The contention of error is overruled.
Joint Trial with Husband
            McMikel next complains that her termination proceeding was defective because it was
combined with that of her husband—during the midst of their divorce proceeding. McMikel
acknowledges there is no authority to support her assertion that she should have been afforded a
separate termination trial, but argues that, because she was placed in the position of being sided with
a man she was suing for divorce, who had abandoned her, and who had committed family violence
against her, her request should have been granted.
            The Department correctly notes there is no indication of a ruling on the motion.


 As a
prerequisite to presenting a complaint for appellate review, the record must show a timely request
or objection and either an express or implicit ruling by the trial court. Tex. R. App. P. 33.1. We
have no record that the trial court ruled on this request for separate trials and, therefore, the request
was waived. 
            Even if the alleged error had been preserved, under the record before us, the trial court did
not abuse its discretion in denying separate trials. Rule 174(b) of the Texas Rules of Civil Procedure
allows a court to order a separate trial "in furtherance of convenience or to avoid prejudice." Tex.
R. Civ. P. 174(b). The court's decision is reviewed for abuse of discretion. Tarrant Reg'l Water
Dist. v. Gragg, 151 S.W.3d 546, 556 (Tex. 2004); Womack v. Berry, 156 Tex. 44, 291 S.W.2d 677,
683 (1956). 
            The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts
present an appropriate case for the trial court's action; rather, it is a question of whether the court
acted without reference to any guiding rules or principles, and the mere fact that a trial court may
decide a matter within its discretionary authority differently than an appellate court does not
demonstrate such an abuse. Downer v. Aquamarine Operators, Inc., 701 S.W.2d 238 (Tex. 1985).
            In this case, even though the husband and wife were (according to McMikel's brief) at odds,
the facts and allegations were intertwined, and the proof provided by the Department to support
termination was such as to, in any event, require nearly identical trials. McMikel has directed us to
nothing in the record that shows any particular unfairly prejudicial attitude, behavior, or testimony
that would not have been admissible even at a separate trial. 
            Under these facts, we find no abuse of discretion by the trial court in denying the motion for
separate trials.
            We affirm the judgment of the trial court.
 

                                                                        Jack Carter
                                                                        Justice
 
Date Submitted:          November 28, 2005
Date Decided:             January 10, 2006