In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-18-00303-CR
_____

SETH JOACHIM HAYNES, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the Criminal District Court
Jefferson County, Texas
Trial Cause No. 17-26762

MEMORANDUM OPINION

A jury convicted appellant Seth Joachim Haynes of murder and assessed punishment at forty years of confinement. In four issues, Haynes challenges the sufficiency of the evidence to support his conviction and asserts that the trial court erred by admitting evidence obtained from an alleged illegal arrest, allowing the prosecutor to strike at him over the shoulders of defense counsel during argument in the guilt-innocence phase, and permitting the prosecutor to argue authorities that

were outside the record and the evidence. We affirm the trial court's judgment of conviction.

## THE EVIDENCE

Tommy Perkins testified that on the morning of January 14, 2017, he heard booming and popping, and he called 911 after seeing that a car was burning. Detective Jesus Tamayo of the Beaumont Police Department testified that on January 14, 2017, he was dispatched to a location where the fire department was battling a car fire, and he learned that there was a body in the car. The burning vehicle was a Kia Soul, and upon investigating, the police learned who owned the car, and the owner identified A.S. as the person who had been driving the car. Tamayo confirmed that the victim was A.S. A.S.'s family informed the authorities that A.S. had been with Haynes the night before, and that Haynes and A.S. had a dispute regarding a stolen gun.

Tamayo testified that Haynes was detained for a traffic violation and taken to the police station, and Haynes gave a statement after he was given *Miranda* warnings. According to Tamayo, Haynes agreed to speak to authorities and was cooperative. A video of Haynes's statement was admitted into evidence and published to the jury over defense counsel's objection asserting that the statement was the product of an illegal arrest.

2

Patrol officer Erin Smith of the Beaumont Police Department testified that he was dispatched to Haynes's location, and Haynes was a murder suspect at that time. Smith explained that he was dispatched to the location because he was in uniform, and none of the other police officers at the scene were in uniform. According to Smith, the location was a gas station. Smith saw a vehicle matching the description provided, and he pulled in front of the vehicle and activated his headlights and emergency lights. Smith explained that he saw a female in the passenger seat of the car, and he saw a male who matched Haynes's description coming out of the store. Haynes was handcuffed, patted down for weapons, and placed in the back of Smith's patrol unit. Smith testified that another officer had advised that probable cause existed to make a stop, and Smith agreed that although Haynes was a murder suspect, the traffic violation was the reason for the stop. The trial judge sustained Haynes's objection to the portion of the video that showed Haynes and his girlfriend conversing in the back of the patrol car, but overruled Haynes's global objection to the video. A redacted video omitting the portion showing Haynes and his girlfriend after they were placed in Smith's patrol car was admitted into evidence and published to the jury.[1]

---

[1]Specifically, defense counsel asserted that the video was the product of an illegal arrest. Defense counsel asserted, "This is an arrest, not an investigatory detention. . . . Thus, anything [Haynes] said res gestae of that in the rear of the patrol

3

Officer Matthew Roberts of the Beaumont Police Department testified that on the evening in question, he was in plain clothes, and he was dispatched to search for Haynes, who was suspected of murder. Roberts was given Haynes's picture, name, date of birth, and told that "he might possibly be driving a vehicle that has a window that has plastic covering over it." Roberts used a database to locate an apartment complex with which Haynes was associated and he and his partner, Officer Eric Kvarme, went to the complex to search for a vehicle matching the description. Roberts found a matching vehicle, and he and his partner watched the vehicle for six to eight hours until someone got into the vehicle. Roberts explained that he and Kvarme followed the vehicle until they "could get a unit in the area to stop it." According to Roberts, he and Kvarme were looking for "[s]ome sort of traffic violation to stop the vehicle." Roberts testified that he did not know whether probable cause existed to obtain a warrant before he went to look for Haynes. Roberts testified that the vehicle failed to maintain a single lane and failed to signal as it turned into a gas station. Roberts explained that he did not pull Haynes over because Roberts was in an unmarked vehicle. Roberts waited for patrol units to reach

car should be excluded under 38.23, in addition to the statement . . . that he gives later . . . at the police station. That also is a product of this illegal arrest." The trial judge found that (1) the arrest was not a product of an illegal stop and (2) Haynes's video statement was not illegally obtained.

the area. Roberts identified Haynes as the person who was stopped, and explained that he had told Smith probable cause existed to stop Haynes.

Kvarme testified that on January 14, 2017, he was advised that the Criminal Investigations Division of the Beaumont Police Department had identified Haynes as a person of interest in the homicide. Kvarme located a vehicle that matched the description in an apartment complex, and when he and Roberts eventually saw the vehicle start to move, they began following in separate unmarked cars. Kvarme testified that he and Roberts notified dispatch of their location, and Smith, who was driving in a marked patrol unit, stopped the vehicle. According to Kvarme, Roberts instructed Smith to stop the vehicle for failure to signal and failure to maintain a single lane of travel. Kvarme explained that he did not personally observe Haynes's traffic violations.

Detective Aaron Lewallen of the City of Beaumont Police Department testified that he was dispatched to the scene of the fire, and he was responsible for searching for clues and determining the victim's identity and what events led to the victim being there. Lewallen explained that he did not find a weapon or anything of interest when he searched the car. Lewallen went to Econo Lodge to find the owner of the vehicle, and the owner told Lewallen that A.S. had the vehicle. Lewallen explained that he spoke with A.S.'s family, and the family put Lewallen in contact

5

with A.S.'s girlfriend, Amber Conway. After talking with Conway, Lewallen determined that Haynes was a person of interest. Lewallen testified that Haynes wanted to talk to investigators and stated that he wanted to clear his name. According to Lewallen, Haynes told the authorities several different stories, and every time authorities told him a fact, Haynes would adapt his story. Lewallen testified that Haynes eventually admitted that he had shot A.S. with a nine-millimeter Glock while A.S. was driving, and then, after Haynes drove the car to another location, he burned the car to get rid of fingerprints and other evidence.

Lewallen testified that Haynes stated "I want to go home" several times during the interview, but Lewallen did not agree that Haynes was expressing a desire to terminate the interview. Lewallen testified that no firearm was found in the vehicle, but the authorities eventually recovered the weapon. According to Lewallen, cell phone data showed Haynes was near the scene of the car fire shortly before authorities received the 911 call.

The trial judge conducted a hearing on Haynes's motion to suppress. During the hearing, Tamayo testified that Haynes was taken directly to the station, and he gave a statement that was recorded on video. Tamayo explained that he informed Haynes of his *Miranda* rights before taking a statement from him. Tamayo testified that Haynes agreed to waive his rights and voluntarily give a statement. Lewallen

testified that he was summoned to the scene of the burning car, and he later went to another location to see the arrest of Haynes. Lewallen explained that he read Haynes his *Miranda* rights before Haynes gave a statement. According to Lewallen, Haynes initially denied killing A.S., but Haynes eventually admitted to killing A.S. and burning the body. Lewallen testified that at the end of the statement, Haynes agreed to take officers to the location of the gun and the gas cans.

The trial court found that (1) because an officer observed a traffic violation, the arrest was not a product of an illegal stop, (2) Haynes's statement, which was made hours later, was legally obtained, (3) the video of Haynes in the patrol car was not the result of an illegal arrest, (4) Haynes received substantially compliant warnings pursuant to Article 38.22, and his statement was not illegally obtained, and (5) under the factors set forth in *Brown v. Illinois*,[2] even if Haynes's statement had been illegally obtained, sufficient time had elapsed between the arrest and the confession to "attenuate the temporal proximity between the statement and any

_____

[2]In *Brown*, the U.S. Supreme Court held that a statement may still be admissible if the stain of illegality can be cleansed by evidence that the statement was voluntary and not a product of an illegal arrest. *Brown v. Illinois*, 422 U.S. 590, 598-99 (1975). The Supreme Court found that in determining whether a statement was sufficiently voluntary, courts must consider (1) whether *Miranda* rights were given; (2) the time lapse between the arrest and the confession; (3) the presence of intervening circumstances; and (4) the purpose and flagrancy of the official misconduct. *Id*. at 603-604.

7

illegal arrest[,]" no significant intervening circumstances, such as threats, occurred; and the police were not acting in bad faith.

Amber Conway testified that she had been in a romantic relationship with A.S. Conway testified that Haynes and A.S. were good friends. According to Conway, A.S. told her while he was out of the state that he wanted to sell a gun to Haynes, and he asked her to take the gun to Haynes. Conway explained that when she met Haynes, she gave him the gun, and Haynes gave her an envelope, which A.S. had told her contained $500. When Conway opened the envelope at her home, she realized that it contained paper towels. Conway testified that she called A.S. and informed him of the situation, and A.S. became "pretty angry." Conway explained that her cell phone contained messages between her and A.S. According to Conway, A.S. was angry, but he did not tell her that he wanted to hurt Haynes. Conway explained that A.S. told her he intended to get the gun back from Haynes.

Joseph Breaux testified that he has known Haynes since middle school. According to Breaux, in the early morning hours of January 14, 2017, Haynes came to Breaux's house. Breaux explained that Haynes asked Breaux for a change of clothes, and Breaux saw dried blood on Haynes's shoes. Breaux later noticed that the gas cans used for his lawn mower had been moved from the back of his truck to a different location, and the cans were empty. Terrance Biggers testified that Haynes

8

told him he killed A.S. because he feared for his life when he saw that A.S. had a "clip," which led him to believe A.S. had a gun. Biggers testified that Haynes told him that he was riding with A.S., who refused to let Haynes get out of the car, and Haynes feared for his life. According to Biggers, A.S. had threatened Haynes and Haynes's family members.

Raeisha Bailey testified that she is in a romantic relationship with Haynes. According to Bailey, Haynes was supporting himself by "[s]elling weed." Bailey testified that on January 13, she and Haynes were living together at her residence, and they left home to obtain milk for their baby. Bailey stated that she saw A.S. "flying around the corner[,]" and A.S. pulled behind her and Haynes and began swerving the blue Kia he was driving. Bailey testified that Haynes told her that A.S. had threatened Haynes's family. According to Bailey, she and Haynes pulled into a drugstore parking lot, and A.S. and Haynes got into an argument. Bailey explained that when she and Haynes were later stopped and handcuffed at a convenience store, she gave police permission to search her home. According to Bailey, while Haynes was in the back of the police car with her, Haynes told her "to tell them that he was home all night."

Carol Hargroeder, an I.D. technician with the Beaumont Police Department, testified that she went to the scene after the fire department had extinguished the fire.

9

Hargroeder explained that there was a body in the back seat of the car, and she examined the scene and took photographs. According to Hargroeder, Detective Lewallen, who was investigating the case, subsequently asked her to go to an apartment where there might be further evidence related to the case, and she took photographs. Hargroeder testified that a gun magazine, holster, ammunition, and dried blood were found in the apartment. Hargroeder also photographed text messages from Conway's phone.

Brandi Dyson, an I.D. technician with the Beaumont Police Department, testified that she was dispatched to photograph the burned vehicle and the body inside the vehicle. Dyson explained that she was also dispatched to another scene, where she photographed broken glass, blood, possible bloody footprints, a lighter, and "some stickers." Dyson collected a bottle cap, a Kia sticker, and a Sirius XM sticker as evidence. Dyson explained that the burned vehicle was a Kia. Dyson was also dispatched to Econo Lodge and a convenience store, and she collected video footage from both locations. Dyson explained that she also collected an envelope that contained paper towels.

Chief forensic pathologist Dr. John Ralston testified that he witnessed the autopsy of the victim being performed by another doctor. According to Ralston, the victim had a perforating gunshot wound to the neck, and his body was heavily

burned. Ralston explained that the bullet went through the victim's neck, fractured his cervical spinal cord, and exited on the opposite side, causing the victim's death. Ralston stated that the manner of death was homicide, and he opined that the victim was dead when the fire occurred.

Haynes testified that at the time of the offense, he was supporting himself by selling marijuana and Xanax. Haynes explained that he wanted to acquire a gun from the victim because Haynes felt that he needed protection from "[a]nybody on the streets." According to Haynes, he and the victim arranged that Haynes would pay $500 for the gun, and that Haynes would meet Conway to obtain the gun. Haynes testified that instead of paying Conway, he gave her an envelope filled with paper towels. Haynes testified that A.S. contacted him about the transaction on the same day it occurred, and he recalled that A.S. was angry. According to Haynes, A.S. called him "pretty much every day, all day," but Haynes avoided the calls. Haynes testified that the messages from the victim were threatening, and he described the incident with the victim that occurred at the drugstore.

Haynes explained that he eventually agreed to meet A.S. to pay the debt for the gun. Haynes testified that he took a "Glock 9" with him and put it in the front pocket of his hoodie because he feared for his life. According to Haynes, he was riding with A.S. and believed that A.S. was going to take him home, but A.S. said,

11

"you['ve] got to meet these people." Haynes testified that at a stop sign, A.S. pulled out a gun and pointed it at him. Haynes testified that he was afraid he would be harmed if he went with A.S. to meet anyone, and he believed "[t]here was no way out." According to Haynes, he shot A.S. when his head was turned at a stop sign. Haynes explained that after he shot A.S., he put the car into park, got out of the car, and moved A.S.'s body onto the back seat. Haynes testified that he got back into the car, picked up A.S.'s gun, drove to Breaux's house, and changed clothes. Haynes explained that he got gas cans at Breaux's house, poured gas on the car, and set it on fire. According to Haynes, he was later arrested at the store. During cross-examination, Haynes admitted that he told Bailey to lie for him.

ISSUE ONE

In his first issue, Haynes asserts that the evidence was legally insufficient to support his conviction. Specifically, Haynes asserts that the State did not meet its burden of proving that he did not act in self-defense when he caused A.S.'s death.

When evaluating the sufficiency of the evidence, we assess all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). In reviewing the sufficiency of the evidence, we consider

12

all the evidence, including evidence that may have been improperly admitted. *Winfrey v. State*, 393 S.W.3d 763, 767 (Tex. Crim. App. 2013); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). We "must give deference to 'the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Hooper*, 214 S.W.3d at 13 (quoting *Jackson*, 443 U.S. at 318-19). The fact finder is entitled to believe all, some, or none of the witnesses' testimony. *Chambers v. State*, 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

A person commits murder if he intentionally or knowingly causes the death of an individual. Tex. Penal Code Ann. § 19.02(b)(1). The jury may consider events that occurred before, during, and after the commission of the offense. *Pitonyak v. State*, 253 S.W.3d 834, 844 (Tex. App.—Austin 2008, pet. ref'd). A defendant bears the burden of producing sufficient evidence to support the defense of self-defense, and once that burden is met, the burden then shifts to the State to disprove the defense; that is, the State must prove, beyond a reasonable doubt, that the defendant did not act in self-defense. *See Zuliani v. State*, 97 S.W.3d 589, 594-95 (Tex. Crim. App. 2003); *Saxton v. State*, 804 S.W.2d 910, 913 (Tex. Crim. App. 1991). In conducting our review, "we determine whether after viewing all the evidence in the light most favorable to the prosecution, any rational trier of fact would have found

13

the essential elements of murder beyond a reasonable doubt and also would have found against appellant on the self-defense issue beyond a reasonable doubt." *Saxton*, 804 S.W.2d at 914.

A person is justified in using force against another if the person reasonably believes that the use of force is "immediately necessary" to protect himself against the other's use or attempted use of unlawful force. Tex. Penal Code Ann. § 9.31(a); *see also* Tex. Penal Code Ann. § 9.32(a) (providing that a person is justified in using deadly force against another if the actor would be justified in using force under section 9.31 and "when and to the degree the actor reasonably believes the deadly force is immediately necessary . . . to protect the actor against the other's use or attempted use of unlawful deadly force"). A jury's verdict of guilt constitutes an implicit finding that it rejected a defendant's self-defense theory. *Saxton*, 804 S.W.2d at 914.

It is undisputed that Haynes shot the victim. As discussed above, we must defer to the jury's responsibility to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Hooper*, 214 S.W.3d at 13. The jury was free to believe or disbelieve the testimony of appellant and the other witnesses. *See Chambers*, 805 S.W.2d at 461. The jury could have properly concluded that Haynes's attempts to conceal evidence,

including moving A.S.'s body to the back seat, obtaining a change of clothes and gas cans, disposing of the weapon, and setting the car on fire with A.S.'s body inside constituted consciousness of guilt. *See King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000). Considering all the evidence in the light most favorable to the verdict, we conclude that a rational trier of fact could have found the elements of murder beyond a reasonable doubt and also could have found against Haynes on his self-defense issue beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319; *Hooper*, 214 S.W.3d at 13; *Saxton*, 804 S.W.2d at 914. Accordingly, we overrule issue one.

ISSUE TWO

In his second issue, Haynes contends that the trial court reversibly erred when it admitted evidence obtained as a result of an illegal arrest. Specifically, Haynes complains that his warrantless arrest was illegal, and that the trial court's admission of the dash cam video from Smith's vehicle (State's Exhibit 133) and the video recording of his statement to the authorities (State's Exhibits 132 and 132A) therefore constituted reversible error because those items were fruit of the poisonous tree.

We review a trial court's ruling on a motion to suppress for an abuse of discretion. *Dyar v. State*, 125 S.W.3d 460, 462 (Tex. Crim. App. 2003). We conduct our review using a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d

15

323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). With respect to a motion to suppress, the trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889, 891 (Tex. Crim. App. 1999). We give almost total deference to the trial court's rulings on (1) questions of historical fact and (2) application-of-law-to-fact questions that turn on evaluation of credibility and demeanor. *Johnson v. State*, 68 S.W.3d 644, 652-53 (Tex. Crim. App. 2002). When the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review *de novo* a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005). We must uphold the trial court's ruling if it is supported by the record and correct under any theory of law applicable to the case, even if the trial court gave the wrong reason for its ruling. *Armendariz v. State*, 123 S.W.3d 401, 404 (Tex. Crim. App. 2003). We review the evidence on a motion to suppress in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). Traffic violations committed in an officer's presence provide probable cause to stop a vehicle and detain the driver. *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App.

16

1992). A law enforcement official may detain a person for a traffic violation regardless of the officer's subjective reasons for the detention. *Id.*

Viewing the evidence in the light most favorable to the trial court's ruling and giving almost total deference to the trial court's findings on questions of historical fact and application-of-law-to-fact questions that turn on evaluation of credibility and demeanor, we conclude that the trial judge did not abuse his discretion in denying Haynes's motion to suppress and admitting Haynes's video statement and the in-car video of Haynes after his arrest. *See Kelly*, 204 S.W.3d at 818; *Johnson*, 68 S.W.3d at 652-53; *Garcia*, 827 S.W.2d at 944. We overrule issue two.

## ISSUE THREE

In his third issue, Haynes argues that the trial court erred by allowing the prosecutor to strike at him over the shoulders of defense counsel during argument in the guilt-innocence phase. Haynes complains of the following argument by the prosecutor during his closing:

> [Prosecutor]: You listen to [Haynes] on that video. . . . He says, "I want to clear my name so I can go home." He's not trying to end the interview. . . . He's making up stories as he goes and giving them just enough because he wants them to let him go home because he doesn't want to go to jail for murdering his friend.
>
> This has nothing at all to do with self[-]defense. This has to do with self[-]preservation -- lie, lie, lie -- and then when you get up here 18 months later, you tell a whole different story. After you've talked to

17

> your lawyers, you find out what it is I need to say. What do I need to say to go home[.]

Defense counsel objected, stating "[i]t's improper argument -- after you talked to your lawyer." The trial court overruled defense counsel's objection.

We review challenges to rulings on objections to improper closing argument for abuse of discretion. *Lemon v. State*, 298 S.W.3d 705, 707 (Tex. App.—San Antonio 2009, pet. ref'd). Permissible jury argument generally consists of (1) summation of the evidence, (2) reasonable deductions from the evidence, (3) responses to opposing counsel's arguments, and (4) pleas for law enforcement. *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008); *Wilson v. State*, 938 S.W.2d 57, 59 (Tex. Crim. App. 1996), *abrogated on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002). Argument that strikes at a defendant over the shoulders of defense counsel is improper. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). The State may not "strike at a defendant over the shoulders of his counsel or accuse defense counsel of bad faith and insincerity." *Fuentes v. State*, 664 S.W.2d 333, 335 (Tex. Crim. App. 1984). A prosecutor risks improperly striking at a defendant over his counsel's shoulders "when the argument is made in terms of defense counsel personally and when the argument explicitly impugns defense counsel's character." *Mosley v. State*, 983 S.W.2d 249, 259 (Tex. Crim. App. 1998).

18

We conclude that the trial court did not abuse its discretion by overruling Haynes's objection to the prosecutor's argument. *See Gallo*, 239 S.W.3d at 767; *Fuentes v. State*, 664 S.W.2d at 335. The complained-of argument, viewed in context, was directed at Haynes's actions and his credibility, and did not refer to defense counsel personally or explicitly impugn defense counsel's character. *See Mosley*, 983 S.W.2d at 259. Additionally, even if the trial court had erred by overruling Haynes's objection, Haynes has not demonstrated that the error affected his substantial rights. *See* Tex. R. App. P. 42.2(b); *Mosley*, 983 S.W.2d at 259 (holding that improper jury argument is not a constitutional violation and is therefore governed by Rule 44.2(b) of the Texas Rules of Appellate Procedure). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997). On this record, we cannot conclude that the complained-of argument had a substantial and injurious effect or influence upon the jury in determining its verdict. *See id*. Accordingly, we overrule issue three.

## ISSUE FOUR

In his fourth issue, Haynes contends that the trial court erred by allowing the prosecutor to argue authorities that were outside the record and the evidence to

weaken defensive instructions in the jury charge. Haynes complains of the following, which transpired during the State's closing argument:

> [The prosecutor]: In this law that we've got -- let me see if I can get this to work this way. . . . [A]n accused has the right to have an instruction on self[-]defense, whether it's weak, whether it's strong. Whether the Court thinks it's credible or not, whether we think it's a valid defense or not, he gets to have that charge. So, don't let the fact that this charge is in there --
>
> [Defense counsel]: I'm going to object. This is outside the record. This wasn't admitted in evidence. The Court hasn't taken judicial notice of this.
>
> [The prosecutor]: That's what the law is. I talked about it in voir dire.
>
> [Defense counsel]: But it hasn't been admitted into evidence. The Court hasn't taken judicial notice of this. We're outside the evidentiary stage of the trial. If they wanted to include that in the charge, they could have asked for an instruction, Your Honor.
>
> THE COURT: He can make his arguments and this is his arguments and he has a right to respond to the defense arguments. He has a right to make comments and his version of the law as the Court has given to him and the facts and the instruction [has] also been given that the statement[s] of lawyers do not constitute evidence and the jury will follow the law.
>
> [Defense counsel]: If I can be clear, Your Honor? I'm objecting that the State's use of Miller v. State in this particular language is outside of the record and his arguments outside of the record that's been adduced at trial. It's also outside of the charge of the law that the Court has submitted to the jury.
>
> THE COURT: All right. Overruled. The State, as I perceive, the State is using graphics to support -- to re[i]nforce the argument he is making during his argument.

20

[Defense counsel]: Your Honor, if I could be clear, I'm not only objecting to the graphic but I'm also objecting to the part, the oral argument that's referencing Miller v. State, Section 9.31 up there. It's outside the record, outside the Court's charge.

THE COURT: All right. Any response about the citation to Miller v. State?

[The prosecutor]: That's what the law says. I talked about it in voir dire. We had it in voir dire, and I'm not misstating the law. I'm using it to back up what the law is in my arguments as far as what I have to present and what I don't have to present. . . . I don't have to present extra evidence. Am I misstating the law? If I'm misstating the law, then I will --

[Defense counsel]: If they wanted this in the charge, they could have asked for this in the charge.

THE COURT: I understand. The Court provides the law for the jury's deliberations, ladies and gentlemen. And what the Court is going to reference to the previous graphic is that . . . it was in writing the argument that [the prosecutor] is making in response to the issues that we are addressing in this case and in response to the argument that was made by the defense and for that purpose it is allowed but remember that the statements of the lawyers do not constitute evidence. The Court provides you the law that you will use that's applicable in your deliberations, but the lawyers have an opportunity to make final arguments. . . . Overruled, with the Court's instruction that the jury shall follow.

As discussed above in our analysis of issue three, we review challenges to rulings on objections to improper closing argument for abuse of discretion. *Lemon*, 298 S.W.3d at 707. A prosecutor may not use closing argument to present new

21

evidence that is outside the record and prejudicial to the accused. *Everett v. State*, 707 S.W.2d 638, 641 (Tex. Crim. App. 1986).

The record reflects that Haynes's counsel argued fairly extensively regarding self-defense. The prosecutor was entitled to respond to defense counsel's arguments. *See Brown*, 270 S.W.3d at 570; *Wilson*, 938 S.W.2d at 59 (holding that permissible jury argument includes responding to opposing counsel's arguments). In addition, "[i]t is well-settled that as a general rule[,] an accused has the right to an instruction on any defensive issue raised by the evidence, whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence." *Miller v. State*, 815 S.W.2d 582, 585 (Tex. Crim. App. 1991). We conclude that the prosecutor's argument did not misstate the applicable law. *See id.* Furthermore, assuming without deciding that the trial court erred by overruling Haynes's objection, Haynes has not demonstrated that the error affected his substantial rights. *See* Tex. R. App. P. 42.2(b); *Mosley*, 983 S.W.2d at 259. On this record, we cannot conclude that the complained-of argument had a substantial and injurious effect or influence upon the jury in determining its verdict. *See id.* Accordingly, we overrule issue four. Having overruled each of Haynes's issues, we affirm the trial court's judgment.

22

AFFIRMED.

$$\underline{\hspace{6cm}}$$
STEVE McKEITHEN
Chief Justice

Submitted on July 9, 2019
Opinion Delivered January 22, 2020
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, JJ.